[Crim. No. 22815. Second Dist., Div. One. Jan. 8, 1974.]

In re WILLIAM T. FARR on Habeas Corpus.

**COUNSEL**

Mark Hurwitz for Petitioner.

John D. Maharg, County Counsel, and William F. Stewart, Deputy County Counsel, for Respondent.

**OPINION**

**THOMPSON, J.**—In this petition for habeas corpus, petitioner William T. Farr seeks further review of an adjudication of contempt ordered by the

Los Angeles Superior Court. The matter has previously been before us on writ of review from the contempt adjudication. In that proceeding, we affirmed the trial court's order. (*Farr* v. *Superior Court,* 22 Cal.App.3d 60 [99 Cal.Rptr. 342].) A petition for hearing by our Supreme Court was denied March 20, 1972. The United States Supreme Court refused certiorari.

Most of the record pertinent to the petition which is now before us is recited in our opinion in *Farr* v. *Superior Court, supra.* So far as pertinent to this proceeding, that record and a subsequent hearing in the trial court disclose the following. In a sensational trial involving multiple charges of first degree murder against Charles Manson and several codefendants, the Los Angeles Superior Court issued an order prohibiting attorneys for the parties, court attaches and witnesses from releasing for public dissemination the content or nature of any testimony to be given at trial or any evidence the admissibility of which might have to be determined by the court. Petitioner was, and now is, a newspaper reporter. The order was violated at petitioner's instigation, and a highly inflammatory statement of a prospective witness was published in a newspaper over petitioner's by-line. Much of the statement was barred from evidence. At the conclusion of the Manson trial, the trial court, acting through a judge who had not issued the original order re publicity, conducted a hearing to determine the source of the violation of the order for the purposes of supplementing the Manson record on appeal and of determining the possible participation by court attaches and officers in the violation. At the hearing, petitioner stated in effect that the order had been violated by two attorneys of record in the case included in a list of six named by him, and by one other person whose status as an attorney of record he declined to confirm or deny. Petitioner refused also to identify the two attorneys of record as being for the defense or prosecution. Over petitioner's objection that it was without power to do so because of the reporter's shield statute encompassed in Evidence Code section 1070, the trial court ordered him to complete his identification of the partially identified sources of the violation of the order. When petitioner refused, he was adjudged in contempt and ordered incarcerated until he complied with the court's order to disclose the specific indentities of the persons who had supplied him with the statement. The trial court, however, stayed execution of its order to permit petitioner to seek appellate review.

Petitioner attacked the adjudication and order re contempt in a petition for writ of review directed to this court. He claimed that the trial court lacked jurisdiction to proceed against him because the Manson trial had terminated and because of the provisions of Evidence Code section 1070.

He argued also that compulsory disclosure of his sources of the statement was precluded by the First Amendment guarantees of freedom of press. In *Farr* v. *Superior Court, supra,* 22 Cal.App.3d 60, we held against petitioner and affirmed the action of the trial court.

After its order was affirmed, the trial court conducted a further hearing at which it gave petitioner an opportunity to purge himself from the contempt and thus relieve himself from the judgment. Each attorney of record included in the list of six originally named by petitioner to the court was examined under oath. Each denied that he was the source of disclosure of the statement to petitioner and each released petitioner from any obligation to maintain his source secret. Petitioner nevertheless refused to disclose the identity of the two attorney officers of the court who had furnished him the statement. Rather, he claimed a continuing obligation to maintain confidentiality of his sources because of a commitment to do so requested by the two culpable attorneys of record in anticipation of a hearing at which they would be questioned and asked to waive any moral or ethical obligation of petitioner to keep their identities secret.

The trial court ordered execution of its prior adjudication of contempt. Petitioner was incarcerated in the county jail. He subsequently attacked the adjudication in the federal district court which also refused to overturn it. Petitioner appealed the district court determination to the United States Court of Appeals for the Ninth Circuit. Both federal courts denied petitioner release on bail pending the appeal. Subsequently, Mr. Justice Douglas of the United States Supreme Court ordered petitioner's release from custody until decision of the United States Court of Appeals. Petitioner was in custody approximately 45 days.

In this petition for habeas corpus, and a supplement to it, petitioner contends: (1) he was denied due process of law because the Court of Appeal held unconstitutional as applied to the facts of *Farr* v. *Superior Court, supra,* the reporter's exemption from contempt contained in Evidence Code section 1070; (2) he was not afforded a hearing before an impartial judge on the citation for contempt; (3) the trial court's order restricting counsel, court attaches and witnesses from publicity releases is a void restraint upon First Amendment rights; and (4) the imposition of a judgment incarcerating petitioner until he complies with the order to identify further the persons who furnished him the statement constitutes cruel and unusual punishment.

Petitioner's contention that he has been denied due process of law by an unexpected constitutional interpretation adopted by this court and left standing by higher courts is not supported by the record or by the

factual allegations of his petition. After our decision in *Farr* v. *Superior Court, supra,* was filed and had become final by refusal of the Supreme Courts of California and the United States to vacate it, petitioner was afforded the opportunity of complying with what had become the law of the case. He refused to do so. It was only after that refusal, at a time when there could no longer be any question of petitioner's legal obligation, that the trial court ordered execution of the order which petitioner here attacks.

Petitioner seeks to avoid the impact of the legal effect of the chronology in the trial court, arguing that his mistaken belief that Evidence Code section 1070 immunized him from contempt for refusing to reveal his sources of publicity caused him to incur a moral and ethical obligation of silence to those who had violated the earlier order of the court. In support of the argument he notes an in-chambers discussion with the trial judge in which the judge stated that as the facts then stood petitioner seemed immune from contempt. The argument lacks substance in the context in which it is presented. We are required to deal with the law and legal obligations regardless of what our personal views of petitioner's nonlegal moral and ethical obligations may be. Good intentions cannot excuse a legal obligation. (*United States* v. *Mine Workers,* 330 U.S. 258, 306-307 [91 L.Ed. 884, 919-920, 67 S.Ct. 677].) The trial judge's comment to petitioner could not have induced any promise of confidentiality to petitioner's sources since the comment was made after petitioner had obtained and published the information. Moreover, the factual setting changed materially after petitioner's discussion with the trial judge. Petitioner, at a subsequent proceeding, disclosed for the first time that the source of the potentially prejudicial publicity was relevant to the pending appeals of the convictions entered in the Manson trial. In listing the sources as including two of six attorneys of record named by him, petitioner for the first time informed the court of facts which triggered its obligation to control its own officers.

Petitioner's contention that he was not afforded a hearing before an impartial judge similarly lacks support in the record or factual allegations of the petition. The proceedings in the trial court which eventually led to the holding that petitioner was in contempt for refusing to answer questions put to him commenced on June 3, 1972. At that time, petitioner stated through his counsel that there would be no challenge to the judge hearing the matter. No objection to the trial judge's acting on the matter was raised at any point in the trial court or in any reviewing court until the adjudication of contempt became final, after the decision of this court on the writ of review and denial of hearing and certiorari by the California and United States Supreme Courts.

Petitioner's claim of bias of the trial judge surfaced at the hearing in which he was afforded the opportunity to purge himself of contempt by disclosing which two of the attorneys of record of the list of six previously named by him were the source of the violation of the earlier court order re publicity, and all six of the attorneys consented to the disclosure. The claim was not timely at that stage of the proceeding. The order adjudging petitioner in contempt and requiring his incarceration until he answered the questions put to him at the proceedings beginning on June 3, 1972, was final. The later hearing merely permitted petitioner to avoid the consequences of the final adjudication. He does not contend in this petition that he either attempted to do so or that any conduct of the trial court prevented him from purging the contempt.

Petitioner's contention of invalidity of the trial court order restricting publicity is not available to him in this proceeding. In essence, petitioner contends that the order is void as an unconstitutional restraint upon freedom of the press guaranteed by the First Amendment. Thus he argues the trial court was without jurisdiction to inquire into violations of the purportedly void order. Petitioner, however, conceded the validity of the order in the trial court by stipulating to its admissibility in the hearing which resulted in the contempt adjudication. In the original petition for writ of review before us, petitioner raised the lack of jurisdiction of the trial court to inquire into the violation of the order but solely on the ground that the trial court's jurisdiction had terminated at the time of its inquiry because of the entry of judgment in the Manson trial. (See *People* v. *Watson,* 15 Cal.App.3d 28, 41-42 [92 Cal.Rptr. 860].)

Petitioner's contention that his commitment until he complies with the order of court constitutes cruel and unusual punishment is contrary to compelling precedent and misconstrues the order itself.

An order of commitment incarcerating a person until he complies with a valid order of court is coercive and not penal in nature. (*Morelli* v. *Superior Court,* 1 Cal.3d 328, 332 [82 Cal.Rptr. 375, 461 P.2d 655].) Its purpose is not to punish but to enforce an order of court made by it to comply with its legal obligation—here, to supplement the record of the Manson trial for the purpose of appeal and to control the court's officers and attaches. (See *United States* v. *Mine Workers,* 330 U.S. 258, 303-304 [91 L.Ed. 884, 917-918, 67 S.Ct. 677]; *In re Salkin,* 5 Cal.App.2d 436, 438 [42 P.2d 1041].) Moreover, the term of commitment imposed by the order in the case at bench limited by the construction given it in the later portions of this opinion is appropriate to the purpose of confinement. Thus we conclude that petitioner's commitment is neither punishment, cruel, nor unusual.

Petitioner argues that the order imposes "an indeterminate sentence" and a "life term." The argument misconstrues the order in the context of the case at bench. A coercive incarceration to compel compliance with an order of court presents a special problem where disobedience of the order is based upon an established articulated moral principle. (See Goldfarb, The Contempt Power (1963), p. 60.) In such a situation, it is necessary to determine the point at which the commitment ceases to serve its coercive purpose and becomes punitive in character. When that point is reached so that the incarceration of the contemner becomes penal, its duration is limited by the five-day maximum sentence provided in Code of Civil Procedure section 1218. (See *In re McKinney,* 70 Cal.2d 8, 10-11 [73 Cal.Rptr. 580, 447 P.2d 972].) Analogy to an area in which a similar need exists to determine the distinction between commitment for a proper civil purpose and incarceration to punish establishes that the test of the distinction lies in the presence or absence of a substantial likelihood that continued commitment will accomplish the purpose of the order upon which the commitment is based. (See *In re Davis,* 8 Cal.3d 798, 801 [106 Cal.Rptr. 178, 505 P.2d 1018], imposing an implied "substantial likelihood" limitation upon a commitment pursuant to Penal Code section 1367 for lack of capacity to stand trial; see also *Jackson* v. *Indiana,* 406 U.S. 715, 738 [32 L.Ed.2d 435, 450-451, 92 S.Ct. 1845]; *McNeil* v. *Director, Patuxent Institution,* 407 U.S. 245, 250 [32 L.Ed.2d 719, 723, 92 S.Ct. 2083].)

■ Thus by proper proceedings before the superior court a determination may be made whether petitioner's continued incarceration will accomplish the purpose of the order requiring that he reveal the identity of the persons who had violated the trial court's order prohibiting prejudicial pretrial publicity releases. The ultimate fact to be determined by the trial court is the presence or absence of a substantial likelihood that petitioner's continued commitment will serve that purpose, i.e., the supplementation of the Manson record on appeal and the effective discipline of the offending two attorneys of record in that case, within a period in which the purpose will be effective.[1]

Thus we conclude: (1) the petition and supplemental petition for habeas corpus do not state grounds for relief; and (2) execution of the judgment of contempt should be stayed to permit petitioner to institute proceedings in

---

[1]The time for which petitioner has already been incarcerated is, of course, relevant to the key ultimate fact. While petitioner could also obtain his release by establishing lack of ability to comply with the order of court, there is no intimation in the record that he testified falsely in stating that two attorneys of a list of six were his sources.

the trial court for relief from the provisions of the judgment in a manner consistent with this opinion. The petitions are denied. If the order of the United States Supreme Court releasing petitioner terminates prior to 60 days from the date of this opinion, execution of the judgment is stayed for that period.

Wood, P. J., and Lillie, J., concurred.