[Civ. No. 49141. Second Dist., Div. One. Dec. 6, 1976.]

In re WILLIAM T. FARR on Habeas Corpus.

**COUNSEL**

Hurwitz & Hurwitz and Mark Hurwitz for Petitioner.

John H. Larson, County Counsel, and William F. Stewart, Deputy County Counsel, for Respondent.

**OPINION**

**LILLIE, J.**—This proceeding was initiated by petition for writ of habeas corpus filed by William T. Farr to review an order of commitment made by Judge Older on August 6, 1974, imposing a sentence of five days imprisonment in the county jail and a fine of $500. Petitioner's challenge

to this order was based on a double jeopardy—res judicata—collateral estoppel theory. We requested, and there were filed, additional briefs of the parties directed to the applicability of section 654, Penal Code. We issued an order to show cause. Return thereto and opposing points and authorities have been filed by respondent court.

The thrust of Farr's contention is that the criminal contempt proceeding, initiated by Judge Older and based on his July 28, 1971, contempt findings and order, in which Farr was sentenced to five days in the county jail pursuant to section 1218, Code of Civil Procedure on August 6, 1974, following his December 6, 1971, acquittal of criminal contempt initiated by Judge Older's affidavit based on substantially the same contempt findings, is barred under the provisions of section 654, Penal Code prohibiting multiple prosecution.

The genesis of this controversy was an order re publicity made by Judge Keene on December 10, 1969, in and prior to the commencement of trial of the criminal case of People v. Manson. This order prohibited any attorney of record, court employee or witness from releasing for public dissemination the contents or nature of testimony that might be given in the trial. It did not purport to be binding on news reporters although it is undisputed that Farr was aware of it. Thereafter during the course of the Manson trial before Judge Older and on October 9, 1970, Farr, a reporter for the Los Angeles Herald-Examiner published a story containing information obtained from a transcript of prospective testimony of Virginia Graham, a potential prosecution witness. It appearing to Judge Older that the publicity order had been violated by one or more attorneys subject thereto, he ordered a hearing to determine the identity of those acting in violation of the publicity order.

On hearings held on June 3 and July 19, 1971, for that purpose, Farr testified that the source of his story was information received, by way of a copy of the Graham transcript, from one or more of the attorneys of record in People v. Manson, and that knowing the attorneys were subject to the publicity order, he nevertheless solicited them to provide him with the transcript in violation of the order in exchange for his promise to conceal their identity; but invoking the protection of the immunity provided in section 1070, Evidence Code, refused to answer 13 questions concerning the identity of the persons who had supplied him with the Graham transcript. At the conclusion of the hearing, and on July 28, 1971, Judge Older made his findings and order adjudging contempts committed in the immediate view and presence of the judge;

order of commitment, and recited therein that Farr knew that the persons from whom he received the Graham transcript were subject to the publicity order, knew those persons violated the order by giving it to him, actively solicited the transcript from them knowing they would violate the order by giving it to him, and "entered into an explicit agreement with each of said parties wherein he promised each of them that if they gave him a copy of the transcript of Virginia Graham's testimony he would refuse to reveal the source of said transcripts and would conceal the identity of each of said persons acting in willful violation of the Court's lawful Order Re Publicity. By so doing, the Court finds that William Farr, knowingly and willfully, actively aided, assisted, abetted and participated with each of said parties in procuring the copies of said transcript in violation of the Court's Order re Publicity." (finding No. 14), that by soliciting the transcripts as aforesaid and by assisting and participating with those violating the order, willfully and knowingly interfered with the proceedings and lawful orders of the court which interfered with the due administration of justice (finding No. 15), and that by committing the foregoing acts, solicited a willful violation of a lawful court order, and by assisting and participating with three parties subject to the order in unlawfully violating said order, Farr was not entitled to the immunity provided in section 1070, Evidence Code (finding No. 16); adjudged Farr to be in direct contempt of court for each question he willfully refused to answer and ordered that he be imprisoned in the county jail until he consents to appear in court and answer each such question under oath. (§ 1219, Code Civ. Proc.)

Less than two months later on September 21, 1971, Judge Older filed an affidavit charging Farr with contempt in that he unlawfully interfered with a lawful order of the court, reciting therein much the same facts as those set up in the foregoing findings of July 28, 1971, and specifically asserting the following: that Farr solicited from attorneys of record in the Manson case the Graham transcript knowing that they were subject to the order re publicity, that said order prohibited release of said transcript for public dissemination and that by giving him the transcript the parties were committing an act in violation of the order amounting to a contempt of court; that he intended to and did use the information contained in the transcript in a story which was published October 9, 1970; that "in each instance, William T. Farr . . . promised explicitly to each attorney that gave him a copy of the transcript of Virginia Graham's statement that he would not reveal who gave him a copy of the transcript in violation of the Court's Order"; and that Farr not only

solicited the performance of an act which he knew would constitute a violation of a lawful court order, he also actively participated and assisted said person (attorney) in violating said order "and facilitated his violation of said Order by promising to conceal his identity."

After a hearing in the criminal contempt proceeding initiated by the foregoing affidavit and on December 6, 1971, Judge Jefferson found Farr "not guilty of any contempt."

Meanwhile Farr filed with this court what was to become his first petition in a long and involved course of appellate litigation seeking review of Judge Older's July 28, 1971, contempt order in state and federal appellate courts which has lasted almost five years. On December 17, 1971, we filed our opinion in *Farr* v. *Superior Court,* 22 Cal.App.3d 60 [99 Cal.Rptr. 342], affirming Judge Older's contempt order of July 28, 1971. Therein we concluded that the trial court properly found Farr to be in contempt of court (p. 63). Farr's petition for a hearing by the California Supreme Court was denied March 20, 1972. Subsequently in November 1972 the United States Supreme Court denied his petition for certiorari. At that time the order of contempt became final. Farr was confined for 45 days under the coercive order and released, without having answered the 13 questions, on a stay of execution issued by Justice William O. Douglas of the United States Supreme Court pending the disposition of his review in the United States Court of Appeals for the Ninth Circuit.

Farr then filed with this court his second petition claiming that the indeterminate sentence for civil contempt (July 28, 1971) constituted cruel or unusual punishment. We filed our opinion in *In re Farr,* 36 Cal.App.3d 577 [111 Cal.Rptr. 649] on January 8, 1974, and denied the petition for writ of habeas corpus holding that the order was coercive and not penal in nature, the purpose being not to punish but to enforce an order of court, thus the commitment was neither punishment, cruel nor unusual. (P. 583.) We suggested that a proceeding be had in the superior court to determine whether there was a substantial likelihood that Farr's continued incarceration under the order would serve its purpose of supplementing the Manson record on appeal and assisting the court in the effective discipline of the offending attorneys of record in that case; and stated that once it was established that there was no substantial likelihood that such contempt order would serve its coercive purpose the commitment would become punitive in nature and thus subject to the statutory limitation. (P. 584.)

Thereafter Farr initiated such proceeding in the superior court. After a hearing, Judge Levit on June 20, 1974, determined that the coercive sentence must be terminated because there was no substantial likelihood that further incarceration would result in Farr's compliance with the court order to reveal the identity of the attorneys; held that further incarceration would be punitive in nature; terminated the indeterminate sentence and ordered Farr released.

The following day, June 21, 1974, Judge Older ordered Farr to show cause why a punitive sentence should not be imposed under section 1218, Code of Civil Procedure on the July 28, 1971, contempt adjudication. The hearing resulted in the August 6, 1974, findings and order adjudging contempts; sentence pursuant to Code of Civil Procedure section 1218; order of commitment, the subject of this review. In considering whether to impose a punitive sentence under the provisions of section 1218, Code of Civil Procedure, Judge Older reexamined the facts and circumstances of the case "with regard to [Farr's] moral culpability, the need for the answers to the questions which he refused to answer, his reasons for refusing to answer, and the harm resulting from his refusal to answer. [¶] By his own testimony he deliberately solicited three violations of the Court's protective order, promising to use his newsman's immunity to perfect this conspiracy by hiding the identity of the violators."

 For the following reasons we conclude that section 654, Penal Code bars successive criminal contempt actions arising out of the same indivisible course of conduct; that an act of criminal contempt of which Farr had been found guilty and for which penal sanctions were imposed on August 6, 1974, arises out of the same indivisible course of conduct as did a prior charge of criminal contempt of which he was acquitted on December 6, 1971; and that the acquittal is a bar to the August 6, 1974, criminal contempt proceeding, and the order of commitment entered therein is void.[1]

Section 654, Penal Code provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or

[1]Inasmuch as the facts herein are undisputed and the only question as to the issue of multiple prosecution is the applicability of section 654, Penal Code, habeas corpus is a proper remedy to review that issue. (Neal v. State of California, 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839].)

conviction and sentence under either one bars a prosecution for the same act or omission under any other."

The first clause of this statute is a preclusion of multiple punishment; the second is a preclusion of multiple prosecution. ■ Although these two clauses are separate and distinct (*Kellett* v. *Superior Court,* 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206]; *Neal* v. *State of California,* 55 Cal.2d 11, 21 [9 Cal.Rptr. 607, 357 P.2d 839]) and here we are concerned only with the second, in disposing of the issue before us we look to the double punishment cases as well as those involving multiple prosecution because "the rule against multiple prosecution is at least as broad as that against double punishment [citations]." (*People* v. *Manago,* 230 Cal.App.2d 645, 647 [41 Cal.Rptr. 260].) ■ Thus, while the statute refers to punishment or prosecution under "different provisions of this [Penal] Code," it is settled that "[t]he interdiction is not limited to the provisions of the Penal Code, but embraces penal provisions in other codes as well . . . ." (*In re Hayes,* 70 Cal.2d 604, 605 [75 Cal.Rptr. 790, 451 P.2d 430]; *Neal* v. *State of California,* 55 Cal.2d 11, 18, fn. 1 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Manago,* 230 Cal.App.2d 645, 647 [41 Cal.Rptr. 260]) and "penal provisions found in other statutes . . . ." (*In re Adams,* 14 Cal.3d 629, 633 [122 Cal.Rptr. 73, 536 P.2d 473]; *People* v. *Brown,* 49 Cal.2d 577, 591, fn. 4 [320 P.2d 5].)

The Code of Civil Procedure enumerates the court's powers respecting the conduct of contempt proceedings (§ 128); defines acts and omissions constituting contempt (§ 1209), direct and indirect contempt and the procedures therefor (§ 1211); and prescribes punishment (§ 1219). Thus upon adjudication of contempt "a fine may be imposed on [contemner] not exceeding five hundred dollars ($500), or he may be imprisoned not exceeding five days, or both; . . . " (§ 1218, Code Civ. Proc.) ■ Because of the penalties imposed under this section, contempt is criminal in nature. (*Raiden* v. *Superior Court,* 34 Cal.2d 83, 86 [206 P.2d 1081]; *Blake* v. *Municipal Court,* 144 Cal.App.2d 131, 136 [300 P.2d 755].) ■ Thus multiple criminal contempt proceedings are directly analogous to multiple prosecutions for offenses defined in statutes other than those contained in the Penal Code; and precedent compels the conclusion that the preclusion of multiple prosecution contained in section 654, Penal Code applies to the criminal contempt process.[2]

---

[2]The proscription against multiple prosecution was applied in a quasi-criminal juvenile proceeding in *In re Benny G.,* 24 Cal.App.3d 371 [101 Cal.Rptr. 28]. Said the court at page 375: "We recognize that a juvenile delinquency proceeding involving the possibility of a substantial loss of freedom is only quasi-criminal in nature. [Citation.] All

■ That in the matter of Farr's conduct in securing the Graham transcript there were successive criminal contempt proceedings is demonstrated on the record before us. The first was initiated against Farr on September 28, 1971, by Judge Older under section 1209, subdivision 8, Code of Civil Procedure resulting in Farr's acquittal on December 6, 1971; the second was initiated by Judge Older by way of order to show cause why Farr should not be punished for the contempt adjudicated by him on July 28, 1971, resulting in the August 6, 1974, imposition of punitive sentence under section 1218, Code of Civil Procedure.

■ As stated in *Kellett* v. *Superior Court,* 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206], the preclusion of multiple prosecution is a procedural safeguard against "needless harassment and the waste of public funds." *Kellett* involved successive criminal prosecutions, but harassment and waste of public funds occur no less in multiple proceedings for criminal contempt arising out of the same course of conduct. As applied to criminal offenses, the theory of the prohibition against multiple prosecution is that "When . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett* v. *Superior Court,* 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206].)

The position advanced by respondent court in its supplemental brief and on oral argument is that Farr "has not been illegally harassed" because under *Yates* v. *United States* (1957) 355 U.S. 66 [2 L.Ed.2d 95, 78 S.Ct. 128] the criminal contempt proceeding of August 6, 1974, in which punitive sentence was imposed, properly was brought subsequent to the coercive proceedings (July 28, 1971) even though they related to the same act. But the issue before us is not whether procedurally Judge Older could separate the coercive and punitive proceedings, which *Yates* permits him to do, or whether he was justified in delaying the criminal contempt proceeding to give Farr the opportunity to change his mind

of the protections accorded a defendant in a criminal trial, therefore, do not necessarily apply to a minor in such a juvenile delinquency proceeding. [Citations.] Nevertheless we believe that Penal Code section 654 applies to such a juvenile proceeding to forbid the multiple initiation of petitions for the same act or course of conduct."

■

and comply with the coercive order, it is whether the criminal contempt proceeding, instituted by Judge Older for the purpose of imposing punitive sentence after Farr's acquittal on December 6, 1971, was barred by virtue of that acquittal under the clause of section 654, Penal Code precluding multiple prosecution. Had Judge Older wanted to insure that Farr would serve a punitive sentence as well as the coercive commitment for his willful refusal to answer the 13 questions, the criminal contempt proceeding for that purpose could have been heard on July 28, 1971,[3] or at the same time as or combined with the hearing on the civil contempt or instituted by order to show cause thereafter, but prior to December 6, 1971, and punitive sentence pursuant to section 1218, Code of Civil Procedure could have been imposed and the execution thereof suspended until termination of the coercive commitment.[4]

Farr contends that he was subjected to multiple prosecution by initiation of successive criminal contempt proceedings against him which arose out of the same course of conduct. Respondent court argues that Farr had been prosecuted for two entirely different and independent acts—unlawful interference with a lawful order of the court, and willful refusal to answer 13 questions concerning the identity of the attorneys of record who gave him the Graham transcript—which are clearly divisible involving different objectives and different consequences thus the former does not bar the latter proceeding. The real issue is whether the same indivisible course of conduct plays a "significant part" in both criminal contempt proceedings. (*Kellett* v. *Superior Court,* 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206]; *People* v. *Flint,* 51 Cal.App.3d 333, 336 [124 Cal.Rptr. 269].) If it does, the acquittal of December 6, 1971, bars the August 6, 1974, criminal contempt proceeding,

---

[3]While the purpose of the hearing which began in May 1971 and resulted in the July 28, 1971, contempt adjudication was to determine who violated the order re publicity, it is obvious from the number of hearings had (June 3, June 30 and July 19, 1971) that Farr's testimony and refusal to answer the 13 questions generated the contempt hearing that resulted in the adjudication and coercive order of July 28, 1971.

[4]It has been suggested that the charge of criminal contempt—interference with a lawful order of the court—which was initiated by Judge Older's affidavit predicated on precisely the same testimony and substantially the same findings which were the basis for the July 28, 1971, coercive order, could have been heard at the same time as the civil contempt and any criminal contempt proceeding for the purpose of imposing a punitive sentence for Farr's willful refusal to answer the 13 questions. Although in the ordinary case we perceive no legal impediment to a consolidation of an indirect contempt hearing with that of a direct contempt, in this case an issue of multiple punishment could have arisen had such a procedure been followed and Farr been found guilty in the indirect contempt hearing.

"Notwithstanding the apparent simplicity of its language, the applicability of section 654 in a particular case often involves a difficult analytical problem. [Citation.] ▮ Each case must be determined on the basis of its own facts, and general principles applicable to one type of case may not apply to another." (*In re Adams,* 14 Cal.3d 629, 633 [122 Cal.Rptr. 73, 536 P.2d 473] [multiple punishment].) However, as stated in *Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective . . . ." the bar of section 654 applies. (P. 19.)

Using the "intent and objective" test enunciated in *Neal* and employed in *Kellett* v. *Superior Court,* 63 Cal.2d 822, 824-825 [48 Cal.Rptr. 366, 409 P.2d 206] and *People* v. *Manago,* 230 Cal.App.2d 645, 647 [41 Cal.Rptr. 260], and examining "the totality of the facts" in light of the legislative goals of section 654, Penal Code (*People* v. *Flint,* 51 Cal.App.3d 333, 336 [124 Cal.Rptr. 269]), an analysis of Judge Older's affidavit charging the contempt resulting in the December 6, 1971, acquittal, and Judge Older's findings and order adjudging contempts; sentence pursuant to Code of Civil Procedure section 1218; order of commitment, resulting in the imposition of punitive sentence on August 6, 1974, establishes that the acts constituting the basis of each contempt are incident to only one objective, and that the two criminal contempt proceedings arise out of the same indivisible course of conduct. The first contempt charge of soliciting and aiding and abetting attorneys of record in violating the publicity order is expressly stated in Judge Older's affidavit to have been accomplished by Farr's "promise[d] explicitly to each attorney that gave him a copy of the transcript of Virginia Graham's statement that he would not reveal who gave him a copy of the transcript in violation of the Court's Order." Farr's refusal to violate that promise is of necessity incident to the conduct charged in that contempt.[5] It is conduct fulfilling the promise of confidentiality which is the basis of the second criminal contempt—refusal to answer 13 questions concerning the identity of Farr's source. Thus Farr's acquittal of December 6, 1971, bars the subsequent proceeding.

In reaching this conclusion we are ever mindful of the obligation of the judiciary to insure a fair trial to a defendant, particularly in a

---

[5]Although in oral argument respondent court contended that Farr could have been charged with unlawful interference with the publicity order without regard to his promise of confidentiality, the fact is that he was not. Moreover, the issue is not whether the acts are the same but whether they arose out of an indivisible course of conduct.

notorious case, guard against unlawful interference in the judicial process and with lawful court orders, prevent willful refusal to obey lawful court orders and control courtroom proceedings. There is before us no issue concerning the validity of the order re publicity made by Judge Keene in People v. Manson, on December 10, 1969, or the existence or scope of a newsman's privilege to protect his source, or Farr's legal obligation to comply with Judge Older's order of July 28, 1971, or the validity of that order, we heretofore having decided these issues adversely to Farr affirming the order re publicity and the order of contempt entered July 28, 1971. (*People* v. *Manson,* 61 Cal.App.3d 102 [132 Cal.Rptr. 265]; *In re Farr,* 36 Cal.App.3d 577 [111 Cal.Rptr. 649]; *Farr* v. *Superior Court,* 22 Cal.App.3d 60 [99 Cal.Rptr. 342].)

The writ is granted. The order of August 6, 1974, is vacated, and petitioner is discharged from the restraints thereof.

Wood, P. J., and Hanson, J., concurred.