[Crim. No. 4492. Fifth Dist. July 31, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY FLOREZ SUL, Defendant and Appellant.

COUNSEL

George L. Schraer and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Diana Beth Constantino, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ANDREEN, J.—Larry Florez Sul appeals from a judgment after conviction by jury of violation of Penal Code section 245, subdivision (a), assault with a deadly weapon, and conspiracy to commit assault with a deadly weapon, a violation of Penal Code section 182, with a finding that he used a firearm within the meaning of Penal Code section 12022.5 on the first charge.

The single issue on this appeal is the propriety of the trial court's admission of witness Gilbert Leon's preliminary hearing testimony at the trial. The factual statement is therefore abbreviated.

The ultimate victim in the case, Eddie Segura, became embroiled in an altercation on a highway in Ivanhoe with the occupants of a car which was traveling so slowly that it obstructed his passage. There were four people in the vehicle ahead of him, three men and one woman. No one was injured in the exchange.

Later the same evening, victim Segura drove to his girl friend's apartment in Woodlake, leaving his car in the street in front of it. In response to a knock, his girl friend, Lydia Martinez, opened the window and a man asked to "talk to that guy who is in there." Segura went to the door, opened it and recognized one of the three men from the incident. (Segura and Martinez later identified him as Frank Zavala who Segura recalled was a passenger in the car involved in the incident.[1]) Segura told him he was sorry and that he did not want any more trouble. Zavala stated he did not want any more trouble either and stepped to his left side. Segura heard a shot and felt something hit him very hard in the chin. He grabbed his chin with his left hand, and was hit again in the hand. At this point, Segura thought he must have blacked out, but in a kind of daze heard more shots, approximately seven or eight. Neither Segura nor Martinez could see the person who shot him.

Segura identified the appellant as the driver of the car in the Ivanhoe confrontation. After being granted immunity, over objection of appellant's counsel, Gilbert Leon, the third man in the car, testified at the preliminary hearing implicating appellant.

At an earlier trial in this matter, Leon refused to testify, was found in willful contempt and was sentenced to five days in jail. The trial resulted in the jury deadlocking, and a mistrial was declared.

When Gilbert Leon was sworn as a witness at the second trial, he requested that his attorney be present while he was being questioned. During a brief recess, Leon conferred with his attorney by phone. When questioning resumed, Leon refused to answer questions without the presence of his attorney. The court reminded Leon it could impose sanctions against him and that he could go to jail if he continued to refuse to answer questions. In the presence of the jury, Leon reminded the court he had already served five days for his refusal to testify during the first trial. Leon continued to refuse to answer questions and the court found him in willful contempt of court and ordered him committed to jail until he was willing to answer questions. The jury was then informed, at defense counsel's request, that it had been stipulated that Leon had previously been granted immunity for his testimony in the case.

---

[1]The third male in the car and the sole female from earlier in the evening were never identified by Segura; Segura did not get a good look at the male nor did he see the female's face.

Over defense counsel's objections that witness Leon was not "unavailable" and that he was not cross-examined by defense counsel during the preliminary hearing testimony, the trial court found that the witness was unavailable, and that his testimony from the preliminary hearing could be read to the jury. The court did not adjourn the proceedings for a period of time in order to determine whether the witness would change his mind and testify.

### UNAVAILABILITY OF WITNESS

The preliminary hearing testimony, admitted pursuant to the former testimony exception to the hearsay rule (Evid. Code, § 1291), was critical to the prosecution's case, so if there was any error, the judgment would have to be reversed. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Enriquez* (1977) 19 Cal.3d 221, 237 [137 Cal.Rptr. 171, 561 P.2d 261].)

We discuss whether the witness was, under these circumstances, "unavailable."

Evidence Code section 240 provides: "(a) Except as otherwise provided in subdivision (b), 'unavailable as a witness' means that the declarant is:

"(1) Exempted or precluded on the ground of privilege from testifying concerning the matter to which his statement is relevant;

"(2) Disqualified from testifying to the matter;

"(3) Dead or unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity;

"(4) Absent from the hearing and the court is unable to compel his attendance by its process; or

"(5) Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process.

"(b) A declarant is not unavailable as a witness if the exemption, preclusion, disqualification, death, inability, or absence of the declarant

was brought about by the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the declarant from attending or testifying."

Appellant argues that Leon was not unavailable as a witness because he had been granted immunity and therefore had no valid privilege to assert under Evidence Code section 240, subdivision (a) (1), or any of the other subdivisions.

Respondent concedes Leon did not have a valid claim of privilege in view of the grant of immunity, but argues that rigid definitions of unavailability are no longer valid.

The attempt by the court to secure the witness' testimony and his reaction thereto is set forth in the margin.[2]

---

[2]"Q. [Prosecution] Would you state your name and spell it for the court reporter, please?

"A. Gilbert Leon, G-i-l-b-e-r-t, L-e-o-n.

"Q. Mr. Leon, do you recall the events of October 26, 1978?

"A. Shew, is it all right if I have my attorney here while I am present?

"THE COURT: Well, we are going to proceed at this time. You knew you were being called as a witness so you should have had him here if you wished to have him with you.

"THE WITNESS: Yeah, but you see, he was in Municipal Court, I think, and he said as soon as I came up here that to have you guys give him a call there at the Municipal Court and he will get here, come over here, as soon as I was being used.

"THE COURT: Well, did you call him?

"THE WITNESS: Uh, yes. I called him and his answering service said that he had left; that he was supposed to get back to her and supposedly he hasn't did it yet.

"THE COURT: Well, we will take a ten minute recess and afford him the opportunity to come up.... (Recess was had.)

"THE COURT: Mr. Leon, you have had a chance to confer with your counsel, Mr. Oliver; is that correct?

"THE WITNESS: Yes.

"THE COURT: On the telephone concerning this matter?

"THE WITNESS: Yes.

"THE COURT: You may proceed.

"MR. MCGLASHAN: Thank you, your Honor.

"Q. [Prosecution] Mr. Leon, do you recall the events of the 26th of October, 1978?

"A. I refuse to say anything without conferring with my attorney. I would rather have my attorney present here.

"THE COURT: You have had a chance to confer with your attorney, Mr. Leon. You are under oath and you must answer material and relevant questions in this proceeding. If you refuse to answer material and relevant questions, the court may impose sanctions upon you which includes sending you to jail. Now, do you understand the consequences of refusal to testify? You may—

"THE WITNESS: Don't I have a right to have my attorney here?

"THE COURT: You have had an opportunity to confer with your counsel in this re-

■ Unavailability of a witness is a preliminary fact to be established to the satisfaction of the trial court by the proponent of the evidence (Evid. Code, § 405; *People* v. *Enriquez, supra,* 19 Cal.3d at p. 235; *Sanchez* v. *Bagues & Sons Mortuaries* (1969) 271 Cal.App.2d 188, 194 [76 Cal.Rptr. 372]; Jefferson, Cal. Evidence Benchbook (1972) § 2.6, p. 48).

Most cases reviewing trial court discretion in reference to determining the preliminary fact of unavailability, have addressed the issue in

---

gard. But we are going to proceed at this time as indicated by the court. You may proceed, counsel.

"MR. MCGLASHAN: May we approach the bench for a moment? (Proceedings were had at the bench as follows:)

"MR. MCGLASHAN: I understand in talking with Mr. Leon he advises me that Mr. Oliver [Leon's attorney] will be available after four o'clock.

"THE COURT: May be.

"MR. MCGLASHAN: He may be, okay. I don't know what position we are in if, you know, if this is right now—

"THE COURT: Well, this doesn't [a]ffect this trial. It [a]ffects maybe this man's rights.

"MR. MCGLASHAN: I realize, but what I am concerned about, your Honor, is that right now he is not exercising a privilege, he is just refusing to testify without his attorney being present.

"THE COURT: He is not asserting any privilege. He has no right to have an attorney present before he testifies.

"MR. MCGLASHAN: Okay. So the court wants us to proceed with the matter?

"THE COURT: The court instructed you to proceed with your case.

"MR. MCGLASHAN: Thank you. (Proceedings were had in open court as follows:)

"Q. Mr. Leon, on October 26, 1978 at approximately 10:30, were you in a vehicle?

"A. I refuse to answer any questions.

"THE COURT: Mr. Leon, if you refuse to answer the questions indicated, the court will impose sanctions against you. You understand that you may go to jail if you refuse to answer?

"THE WITNESS: I already got five days for this same trial right here.

"THE COURT: I just want you to understand what the sanctions may be if you refuse to testify. Now, repeat the question, Madam Reporter. (The question was read back as above transcribed.)

"THE WITNESS: I refuse to answer.

"THE COURT: Well, the court at this time is going to find that you are in willful contempt of the court's order. The court is ordering you to answer the question. Do you understand?

"THE WITNESS: Yeah.

"THE COURT: Do you still refuse to answer the question?

"THE WITNESS: Yeah.

"THE COURT: The court then will find you in willful contempt of the court's order to answer the question and the court will commit you into the custody of the Sheriff's Office of Tulare County until you answer the question. You may step down.

" . . . . . . . . . . . . . . .

"THE WITNESS: How long, your Honor?

"THE COURT: Before [*sic*] you answer the question. You may step down."

the context of due diligence by the prosecution to prove that the witness is unavailable by the court's processes. The ruling of the trial court usually remains undisturbed (*People* v. *Williams* (1973) 9 Cal.3d 24, 35 [106 Cal.Rptr. 622, 506 P.2d 998]). However, since the Sixth Amendment right to confront witnesses is involved in criminal trials, the appellate court may find an abuse of discretion if it determines that the prosecution did not use due diligence. (*People* v. *Enriquez, supra*, 19 Cal.3d at pp. 236-237.)

In the instant case, the court had before it a witness who first demanded that his attorney be present before he testified. Apparently, the attorney was attending another trial and was not immediately available. The court afforded the witness the right to talk to his attorney over the telephone. Following that, the witness continued his refusal to say anything "without conferring with my attorney. I would rather have my attorney present here." He then refused to answer any questions.

The matter is not covered by any of the provisions of Evidence Code section 240. The Supreme Court was confronted with a somewhat analogous case in *People* v. *Rojas* (1975) 15 Cal.3d 540 [125 Cal.Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127]. Witness Navarrette, a passenger in a car driven by Rojas, testified as the chief prosecution witness at the preliminary hearing and the first trial. The jury was unable to reach a verdict, so was discharged. At the second trial, Navarrette indicated that he would refuse to testify. At an *in camera* hearing, he stated "that he had received threats by letter and telephone, that bottles had been thrown at his car, that 'things' on his father's car had been broken, that he was called names at school such as 'snitch,' that he was struck physically on one occasion and that he feared for his life and that of his family." (*Id.*, at p. 547.) He persisted in his refusal after being told that he would be found in contempt of court; he was so found and sent to juvenile hall for the duration of the trial. (*Ibid.*)

The opinion noted that the record demonstrated that Navarrette harbored a fear and that there was no challenge made to the sufficiency of the evidence supporting the trial court's determination that the fear was justified. (*Id.*, at p. 550.)

The court construed section 240 of the Evidence Code to express a legislative intent to deem a person unavailable if he is present in court but refuses to testify out of fear. He was thus unavailable as a witness within the meaning of Evidence Code section 240, subdivision (a)(3).

The court noted that to hold otherwise would thwart the ends of justice. (*Id.*, at pp. 551-552.)

The opinion concludes with the following paragraph: "In summary, we conclude that Navarrette's refusal to testify on the grounds of fear for the safety of his person and that of his family rendered [] [him 'unavailable as a witness' within the meaning of section 240, subdivision (a)(3).] There was no way in which he could be compelled to testify. The finding that he was in contempt of court and the punishment therefor could not and did not compel Navarrette to testify. []" (*Id.*, at p. 552.)

The trial court below heard no evidence of threats or violence. Witness Leon requested that his attorney be present. The court denied this request for the apparent reason that the attorney was engaged elsewhere. There was, and could be, no finding of fear.

Another apparent dissimilarity with the *Rojas* case was that the trial court there found that punishment for contempt could not compel Navarrette to testify. There is an implied finding to that effect in the instant case, which is substantiated by the fact that Leon refused to testify in the first trial and suffered a five-day sentence for his contempt. And he seemed willing enough to suffer similar incarceration at the second trial.

We have searched for, but have not found a case which discusses whether a court faced with a contumacious witness who refuses to testify, without expressly giving as his reasons threats of violence or actual violence, has the duty to adjourn proceedings for a reasonable time in order to determine if the witness will change his mind and testify as a result of coercive incarceration.

An annotation entitled Admissibility of Former Testimony of Nonparty Witness, Present in Jurisdiction, Who Refuses to Testify at Subsequent Trial Without Making Claim of Privilege (1979) 92 A.L.R.3d 1138, offers some guidance. That portion of the annotation which is relevant to the instant case—former testimony other than before a grand jury admissible in a subsequent criminal trial—cites several cases on the issue. In each of them that discusses the actions of the witness or the trial court's attempts to induce the witness to testify, there was a stronger showing of witness unavailability than that under review in the instant case. In some, the recalcitrant witness was already

imprisoned on some other charge, and threats of contempt were obviously unavailing. (*Johnson v. People* (1963) 152 Colo. 586 [384 P.2d 454]; *State v. Terry* (1969) 202 Kan. 599 [451 P.2d 211]; *State v. Ghoram* (La. 1976) 328 So.2d 91; *State v. Pearson* (La. 1976) 336 So.2d 833; *Gaskins v. State* (1971) 10 Md.App. 666 [272 A.2d 413].) In one case, there is no discussion of the circumstances surrounding the witness' refusal to testify other than he did so refuse and was held in contempt, and it is impossible to determine if the trial judge took reasonable steps to induce the witness to testify. (*State v. Dixon* (1971) 107 Ariz. 415 [489 P.2d 225].)

In *State v. Thomas* (1973) 110 Ariz. 120 [515 P.2d 865], the witness was apparently hospitalized at the time of the trial. The court examined him and concluded that "it is obvious that the man is incapable of testifying" which finding was amply supported by excerpts from the witness' testimony. (*Id.*, at p. 870.)

In *United States v. Brasco* (S.D.N.Y. 1974) 385 F.Supp. 964, a witness refused to testify for reasons which appeared on the record *in camera* but not divulged in the written opinion. He was adjudged in civil contempt on Thursday, June 27, 1974, and given until Monday, July 1 to either purge himself of contempt or to show cause why he should not be found guilty of criminal contempt. On July 1, despite the urgings of his attorney and the court, he refused to testify. The court admitted his prior testimony, basing the ruling on *Mason v. United States* (10th Cir. 1969) 408 F.2d 903, certiorari denied 400 U.S. 993 [27 L.Ed.2d 441, 91 S.Ct. 462].

*Mason*, a case not cited by the editor of the American Law Reports annotation, was a second trial, and the prosecution called some witnesses who refused to testify on Fifth Amendment grounds. Immunity was then granted. However, all but one continued their refusal to testify. They were already in custody serving sentences for violations of the narcotic laws. When the witnesses persisted in their refusal, the trial court appointed counsel to represent them. "Time was afforded and consultations were had." (*Id.*, at p. 905.) The witnesses persisted in their refusal. The appellate court found "The record here shows that the trial judge did all that was reasonable and proper to have the witnesses testify." (*Id.*, at p. 906.)

We adopt the *Mason* standard of permitting former testimony of a witness who is physically available but who refuses to testify (without

making a claim of privilege) if the court makes a finding of unavailability only after taking reasonable steps to induce the witness to testify unless it is obvious that such steps would be unavailing. Such action is required, else the defendant is denied his Sixth Amendment right to confrontation.

In the instant case, witness Gilbert Leon was on the witness stand at 2:23 p.m., on Friday afternoon, the second day of trial. It was apparent that the case could not finish that day, and that arguments and instructions would take place on the following Monday. The witness requested that his attorney be present. Although technically he might not be entitled to this, his request was not exorbitant. The attorney could not appear immediately because he was involved in litigation in another court, but had indicated that he might be available at 4 p.m.

An attorney would have been helpful to the court. He could have explained to the witness the difference between coercive incarceration and punitive incarceration.[3] The witness had been subjected to a sentence for five days for contempt at the first trial, and apparently was willing to suffer a similar fate. Had he understood that the court in the instant trial was threatening to place him in jail until he was willing to testify, he might have responded differently. Also, the attorney would have been useful if the witness was unsure of the scope of the immunity order.

In order to assess whether the trial court's actions were reasonable, we must discuss the alternatives which were available to it in addition to waiting until 4 p.m. to see if the attorney was then free.

It was an inconsistent act to commit the witness to the custody of the sheriff until such time as he would answer the questions and then to immediately proceed with the admission of his former testimony. If the court was disinclined to accord the witness his request for the presence of his attorney, it would have been more reasonable to have incarcerated the witness for the weekend and have him brought in Monday to determine if he had recanted. On Monday, if he still refused to testify, the court could assess whether still another continuance for a reasonable period would have the desired effect. We do not hold that such a continuance would be necessary. It might appear from the witness' responses that further incarceration would not result in live testimony.

---

[3]See *In re Farr* (1974) 36 Cal.App.3d 577 [111 Cal.Rptr. 649].

Still another arrow in the court's quiver was a prosecution for criminal contempt. Penal Code section 166 provides: "... Every person guilty of any contempt of Court, of either of the following kinds, is guilty of a misdemeanor:

"      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"6. The contumacious and unlawful refusal of any person to be sworn as a witness; or, when so sworn, the like refusal to answer any material question; ..." A prosecution under this section would carry with it the possibility of imprisonment in the county jail for not in excess of six months and/or a $500 fine. (Pen. Code, § 19.) It is recognized that this punishment is somewhat unsatisfactory in that it does not provide the advantage of summary procedure. However, if Leon had been apprised of this possibility, he might have been more tractable. If this procedure were utilized, care would have to be taken to insure that any prior incarceration for contempt was coercive and not punitive in nature, otherwise double jeopardy would preclude the use of section 166 of the Penal Code. (*People* v. *Lombardo* (1975) 50 Cal.App.3d 849, 854 [123 Cal.Rptr. 755].)

The district attorney knew of the problem before trial because of the difficulty with the witness at the first trial. He should have apprised the court of this before the trial commenced. Having done so, the court, before the jury was impaneled, could have called Leon before it to determine whether he would testify as a witness. If he indicated he would not, the court could impanel the jury with the statement to the prospective jurors that a recess might be necessary before any testimony is taken, so that those who would be inconvenienced thereby could be excused. Once the jury was impaneled and sworn, Leon could have been sworn and his intentions in reference to testifying ascertained. If he declined to testify, coercive contempt could be instituted,[4] and the jury placed on call.[5] This would not deprive the defendant of his constitutional or statutory right to a speedy trial. (*People* v. *Salcido* (1968) 263 Cal.App.2d 1 [69 Cal.Rptr. 193].) If the time extended for an appreciable period, the defendant might be given the choice of waiving time or having the court declare that the witness is unavailable.

---

[4]Because of former jeopardy problems some alternate jurors would be advisable.

[5]The court need not conduct this hearing before the jury. (*In re Keller* (1975) 49 Cal.App.3d 663, 666-667 [123 Cal.Rptr. 223].)

We do not suggest that any or all of the above procedures must be tried before making a finding of unavailability. They are, however, indicative of some of the resources which a trial court can bring to bear to secure the testimony of a recalcitrant witness.

The court in the instant case did nothing directed toward obtaining the witness' testimony other than finding him in contempt and sending him to jail. In view of the importance of the Sixth Amendment right of confrontation, this was not sufficient.

Because the case will have to be retried, we discuss the second contention of the appellant—that even if there is a finding of unavailability, the preliminary hearing testimony would not be admissible because defense counsel did not cross-examine Leon, although he had the opportunity to do so.

Section 1291, subdivision (a)(2), of the Evidence Code does not require cross-examination as a prerequisite to admissibility. It is enough if defense counsel "... had the right and opportunity to cross-examine the declarant ...."

The trial judge aptly pointed up the problem when he stated: "If you have a situation where a person turns state's evidence and a person lays back, just waived their right to cross-examine, in effect, in between the preliminary examination and the trial actually threaten the witness, I am not saying this occurred in this case, but certainly it could occur, then threaten the witness and the witness would, in effect, because of that fear refuse to testify at the trial. By that stratagem, of course, he could defeat something that would be adverse to his own interest. He could defeat the person turning the state's evidence by that strategy."

While appellant argues at length that in order for the right to confrontation to be at all meaningful, *actual* cross-examination must take place, he fails to take note of the following language in *People* v. *Green* (1971) 3 Cal.3d 981, 990 [92 Cal.Rptr. 494, 479 P.2d 998] (on remand from *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930]): "Whether or not a witness is actually cross-examined, the fact the defendant has an adequate *opportunity* to carry out such an inquiry satisfies the confrontation clause. (*Pointer* v. *Texas* (1965) 380 U.S. 400, 407 [... 85 S.Ct. 1065].)" (Italics original.) The preceding quotation arose in the context of the admission of a witness' prior inconsistent statement at trial, when the witness was on the stand and under

oath, but the defendant "in effect declined to [cross-examine]" (only one question on topic asked of witness). (*Ibid.*)

The threefold purpose of confrontation is (1) to insure reliability by means of the oath, (2) to expose the witness to the probe of cross-examination, and (3) to permit the trier of fact to weigh his demeanor. (*California v. Green, supra*, 399 U.S. at p. 158 [26 L.Ed.2d at p. 497]; *People v. Green, supra*, 3 Cal.3d at p. 989.) In the instant case all three elements were satisfied: (1) the preliminary examination testimony read to the jury had been made under oath, (2) the opportunity to cross-examine existed at the preliminary examination and (3) Leon took the stand during the second trial and his refusal to testify was made in the presence of the jury. (See also *People v. Hernandez* (1968) 263 Cal. App.2d 242, 252 [69 Cal.Rptr. 448]: "McCormick's work on Evidence points out in section 231 at page 482 that actual cross-examination is unnecessary so long as the opportunity therefor existed.")[6]

The comment of the Assembly Committee on Judiciary, West's Annotated Evidence Code (1966 ed.) section 1291, page 333, states: "Paragraph (2) of subdivision (a) of Section 1291 provides for the admissibility of former testimony where the party against whom it is now offered had the right and opportunity in the former proceeding to cross-examine the declarant with an interest and motive similar to that which he now has. Since the party has had his opportunity to cross-examine, the primary objection to hearsay evidence—lack of opportunity to cross-examine the declarant—is not applicable. . . ." This sets forth the only statutory and constitutional requirement.

Even though the issue at a preliminary hearing involves probable cause to commit a defendant for trial, as distinguished from the issue at trial of guilt beyond a reasonable doubt, for the purpose of determining admissibility of preliminary hearing testimony at trial with respect to a witness who was not available to testify at trial, the interest and motive for cross-examination at the preliminary hearing are deemed sufficiently similar to the interest and motive for cross-examination of the same

---

[6]Appellant points to language in *People v. Johnson* (1974) 39 Cal.App.3d 749, 756 [114 Cal.Rptr. 545] to the effect that preliminary hearing testimony of a witness is admissible in evidence at trial only if (1) *the witness was cross-examined at the preliminary hearing*; (2) his testimony was necessary; (3) due diligence was exercised to secure his trial attendance. However, the case contains no analysis underlying such a conclusion and appears contrary to the language of Evidence Code section 1291, subdivision (a)(2). (See *People v. Green, supra.*)

witness at the guilt trial so as to preclude application of the witness confrontation constitutional right. (*People v. Salas* (1976) 58 Cal.App.3d 460, 468 [129 Cal.Rptr. 871]; *People v. Johnson, supra,* 39 Cal.App.3d at p. 755; *People v. King* (1969) 269 Cal.App.2d 40, 47-48 [74 Cal. Rptr. 679].)

Although the right of cross-examination afforded a party in a prior proceeding under section 1291, subdivision (a)(2), must have been "meaningful" (*People v. Johnson* (1975) 46 Cal.App.3d 701, 704 [120 Cal.Rptr. 372]—deficiencies in translation by interpreter at preliminary examination denied defendant a reasonable opportunity to cross-examine), nothing in the instant record indicates appellant did not have the opportunity to have meaningful cross-examination at his preliminary examination.[7]

The judgment is reversed.

**ZENOVICH, Acting P. J.**—I concur with the lead opinion, but express one reservation in so doing. Although the discussion of alternatives is somewhat instructive, it is my opinion that trial judges—pressed as they are by the docket of never-ending cases—do not have to take extreme actions before making a finding of unavailability. Reasonable efforts, in this case, would have been satisfied by adjourning for the weekend in an attempt to allow Leon to get in touch with his attorney. No more should have been required. Nevertheless, given the present facts, I agree that the court below could have exercised an extra scintilla of patience with witness Leon before admitting his preliminary hearing testimony into evidence under the former testimony exception.

---

[7]At the preliminary examination appellant's attorney, Foor, asked questions of most witnesses—e.g., Segura, Baker, Lydia Martinez. No questions were asked of Alfred Silva. Foor testified that Sul did not object when he did not ask questions of Leon. Sul advised Foor before Leon testified at the preliminary examination that Sul did not believe Leon would be testifying either at the preliminary examination or at any stage of the proceeding against him. This influenced Foor at the preliminary hearing. Foor could not recall any later complaint regarding his failure to cross-examine Leon at the preliminary examination.