[No. F008244. Fifth Dist. Apr. 19, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIA H. FRANCIS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Mark D. Warshaw, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and W. Scott Thorpe, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BALLANTYNE, J.—**

### INTRODUCTION

Defendant, Julia H. Francis, appeals her convictions of first degree murder, kidnapping and an arming allegation. Defendant was a member of a group of six who shot and killed Ashraf Bandari. Three members of the group, Lori Harkins, Jennifer Wilson and Mike Wilson, entered into plea bargains in exchange for their testimony against the rest of the group. Lori Harkins and Jennifer Wilson refused to testify at trial. The court, after extensive efforts to persuade them to testify, found them unavailable, and their testimony from the preliminary hearing was read into the record. Robert Campo, another member of the group, testified but answered almost

every question with "I don't remember." The defendant contends on appeal that the court committed prejudicial error in allowing these statements to be impeached with inconsistent prior statements and testimony. We disagree and will affirm the judgment.

## FACTS

In 1984, the defendant was a waitress at Denny's Restaurant in Fresno. While working there she became acquainted with the victim Ashraf Bandari (hereinafter Bandari). They eventually developed a boyfriend/girlfriend relationship. At the time of their relationship, defendant was on probation for a misdemeanor drug conviction. Their relationship was deteriorating in August of 1984.

In late August of 1984 Bandari spoke to Mark L. and told him he should not go to defendant's house because he (Bandari) was going to have everyone in the house busted for drugs. Mark L. related this information to the defendant. Defendant was also informed by her probation officer that he had information she was using methamphetamines. This occurred in mid-August.

During the afternoon of September 3, 1984, defendant was asleep on the couch in her home when she was awakened by Bandari. She told him to leave but he refused. Also present in her home on this afternoon were Russell Goodin, defendant's brother, and his good friend Michael Wilson. Both had been living at defendant's house. Defendant told Russell and Michael that she did not want to see Bandari anymore and she wanted something done with him. Russell asked Michael to go outside and get something to hit Bandari over the head with. Russell would send Bandari outside. Michael went outside, grabbed a crowbar and waited a couple of minutes. He had a change of heart and returned inside the house. Michael and Russell had been told that Bandari had threatened to turn them in for some burglaries they had allegedly committed.

Michael took defendant to work and returned to the house. He and Russell talked about what to do with Bandari. They tied him up for about 15 to 20 minutes and then untied him.

Michael, Russell and Bandari got in the car and picked up Jennifer Wilson (Michael's sister), Lori Harkins and Robert Campo. They all returned to defendant's house and partied. Lori Harkins, Jennifer Wilson and Robert Campo had also been drinking earlier in the day.

The defendant returned home about midnight. Michael and Lori went to Lori's house and got some handcuffs. Defendant, Lori and Jennifer went to

the store. During this trip the defendant told them Bandari was going to "snitch her off" about some crank. She said something should be done. They returned to defendant's house and the three discussed what should be done. Defendant said that Bandari should be killed. Defendant said Robert Campo should do it because he was the youngest.

During the course of the early morning hours Bandari was handcuffed and stripped and placed on the bed. Lori hit him and taunted him. Defendant witnessed this and left the room. Bandari was moved to the living room and handcuffed to the furnace. The group continued to drink and also snorted crank.

Around sunrise the group all got in the car, except the defendant. The defendant was on the front porch and told the group to be careful. The group drove to Shaver Lake, dug Bandari's grave, placed a garbage bag over his head and feet and made him lie in his grave. Robert Campo then shot Bandari in the back of the head. Lori lifted the garbage bag to make sure he was dead.

They returned to Fresno dumping the gun and hoe into a canal. They went to defendant's house. Defendant was asleep on the couch. Lori woke her up and told her it was done. Defendant told everyone to keep quiet about it.

When questioned about Bandari after September 4 by his friends and defendant's probation officer, defendant said she had broken up with Bandari and would not be bothered by him anymore.

## DISCUSSION

### I.

#### DID THE COURT PROPERLY DETERMINE THAT LORI HARKINS AND JENNIFER WILSON WERE UNAVAILABLE WITNESSES?

Evidence Code section 240 provides in pertinent part: "(a) Except as otherwise provided in subdivision (b), 'unavailable as a witness' means that the declarant is any of the following:

"(1) Exempted or precluded on the ground of privilege from testifying concerning the matter to which his or her statement is relevant.

"(2) Disqualified from testifying to the matter.

"(3) Dead or unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity.

"(4) Absent from the hearing and the court is unable to compel his or her attendance by its process.

"(5) Absent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process.

"(b) A declarant is not unavailable as a witness if the exemption, preclusion, disqualification, death, inability, or absence of the declarant was brought about by the procurement or wrongdoing of the proponent of his or her statement for the purpose of preventing the declarant from attending or testifying."

In *People* v. *Sul* (1981) 122 Cal.App.3d 355 [175 Cal.Rptr. 893], this court addressed the question of unavailability in terms of the physically available yet unwilling to testify witness. In *Sul,* witness Leon was granted immunity and testified at defendant's preliminary hearing. At trial he refused to testify, was held in contempt and was sentenced to five days in jail. The jury deadlocked and a mistrial was declared. At defendant's second trial Leon was again sworn as a witness. Leon requested the presence of his attorney. He conferred with his attorney on the phone and then refused to answer questions without the presence of his attorney. After being reminded of the court's power to hold Leon in contempt, he continued to refuse to answer questions and was held in contempt. (*Id.* at p. 358.) The trial court found that Leon was unavailable and allowed his testimony from the preliminary hearing to be read to the jury. (*Id.* at p. 359.) "The court did not adjourn the proceedings for a period of time in order to determine whether the witness would change his mind and testify." (*Ibid.*) Defendant was convicted and appealed claiming that Leon was not unavailable within the meaning of Evidence Code section 240. (*Id.* at p. 360.)

This court endorsed the standard set forth in *Mason* v. *United States* (10th Cir. 1969) 408 F.2d 903, which permitted "former testimony of a witness who is physically available but who refuses to testify (without making a claim of privilege) if the court makes a finding of unavailability only after taking reasonable steps to induce the witness to testify unless it is obvious that such steps would be unavailing. Such action is required, else the defendant is denied his Sixth Amendment right to confrontation." (*People* v. *Sul, supra,* 122 Cal.App.3d 355, 364-365.)

"*Mason*, . . . , was a second trial, and the prosecution called some witnesses who refused to testify on Fifth Amendment grounds. Immunity was

then granted. However, all but one continued their refusal to testify. They were already in custody serving sentences for violations of the narcotic laws. When the witnesses persisted in their refusal, the trial court appointed counsel to represent them. 'Time was afforded and consultations were had.' (*Id.,* at p. 905.) The witnesses persisted in their refusal. The appellate court found 'The record here shows that the trial judge did all that was reasonable and proper to have the witnesses testify.' (*Id.,* at p. 906.)" (*Id.* at p. 364.)

The court in *Sul* thought the trial court should have taken further action to coerce the witness to testify. It suggested the following: (1) appoint an attorney to represent the witness to correctly advise him of the consequences, (2) incarcerate the witness for a period of time to see if the desired effect is achieved, (3) prosecute the witness for criminal contempt (Pen. Code, § 166), and (4) initially tackle the problem before the trial commences. (*Id.* at pp. 365-366.) "We do not suggest that any or all of the above procedures must be tried before making a finding of unavailability. They are, however, indicative of some of the resources which a trial court can bring to bear to secure the testimony of a recalcitrant witness.

"The court in the instant case did nothing directed toward obtaining the witness' testimony other than finding him in contempt and sending him to jail. In view of the importance of the Sixth Amendment right of confrontation, this was not sufficient." (*Id.* at p. 367.)

The court in *People* v. *Walker* (1983) 145 Cal.App.3d 886 [193 Cal.Rptr. 812] followed *Sul* based on the following facts: ". . . [O]ne Tommy Lee Olsen was a prospective witness against Walker at the latter's trial for murder. Witness Charles Bell at Walker's preliminary examination had testified to Walker's solicitation of him, during his jail confinement, to murder Tommy Lee Olsen. The witness was there available for cross-examination by Walker, *and was so cross-examined.* By the time of Walker's trial the witness was himself facing charges of several felonies. Called by the People for his testimony at Walker's trial the witness, saying 'I don't want to take the stand,' steadfastly refused to answer any questions. Asked if he would testify if granted immunity, he answered, 'No,' and 'I'm not going to testify, your Honor . . ., I'm not testifying.' Threatened by the court with contempt, he stated that he would nevertheless not testify. And when the court asked why he would not 'answer those questions,' the response was: 'I don't have no comments on that, your Honor.' The trial court then recognized that the witness was facing 'somewhere around 60 years of incarceration,' and that confining him until he agreed to testify would be unproductive and idle. The court then *ordered* the witness to testify. He again said he would not, and he did not.

"The trial court thereupon declared Bell to be *'unavailable'* as a witness, and permitted the People to place in evidence his direct examination, *and cross-examination,* at Walker's preliminary examination." (*Id.* at pp. 893-894.)

The appellate court found that the trial court "took reasonable steps to induce the witness to testify, but found them unavailing. There was no error." (*Id.* at p. 894.)

 Defendant asserts that her constitutional right to be confronted with the witnesses against her was violated when the court permitted Lori Harkins's and Jennifer Wilson's preliminary hearing testimony to be read to the jury. Defendant argues that the exception to the confrontation clause when a witness is unavailable must be narrowly construed. She asserts that the witness who is available but refuses to testify does not fall within the language of Evidence Code section 240.

"The United States Supreme Court has established that a defendant's Sixth Amendment right to confrontation is a fundamental right, applicable to the states through the Fourteenth Amendment. (*Pointer* v. *Texas* (1965) 380 U.S. 400 . . . .) The California Constitution now provides a specific guarantee of the right to confrontation: 'The defendant in a criminal cause has the right . . . to be confronted with the witnesses against the defendant.' (Cal. Const., art. I, § 15.) A similar guarantee is codified in section 686, subdivision 3, of the Penal Code, which provides that in a criminal action the defendant is entitled 'to produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court . . . . ," (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 515 [194 Cal.Rptr. 431, 668 P.2d 738].)

 "The right to confrontation primarily secures the defendant's right to complete and adequate cross-examination. (*Pointer* v. *Texas* (1965) 380 U.S. 400, 405-407 . . .; *People* v. *Brock* (1985) 38 Cal.3d 180, 189 . . . .) However, 'there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. [Citation.] This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purpose behind the confrontation requirement. [Citations.]' (*Barber* v. *Page* (1968) 390 U.S. 719, 722 . . . .) In California, this exception is codified in Evidence Code section 1291, subdivision (a)(2): '(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: . . . [¶] (2) The party against

whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (*People v. Ogen* (1985) 168 Cal.App.3d 611, 616 [215 Cal.Rptr. 16].)

■ "It is equally well settled that the right of cross-examination is the primary interest secured by the confrontation guarantee and an essential safeguard of a fair trial. . . . [¶] . . . [T]he right of cross-examination afforded at the preliminary hearing 'provides substantial compliance with the purposes behind the confrontation requirement.'" (*People v. Brock* (1985) 38 Cal.3d 180, 189 [211 Cal.Rptr. 122, 695 P.2d 209].)

■ It appears that defendant is not arguing that the court did not take reasonable steps to secure the attendance of the witnesses. Even if she were arguing this, it would clearly fail. The trial court took all the steps suggested in *Sul* and then some. The trial judge exhaustively covered every possible alternative to coerce the testimony of Lori Harkins and Jennifer Wilson and repeated some steps more than once.

It also appears that defendant does not assert that she was denied the opportunity of adequate cross-examination with an interest or motive similar to that at trial. Again, even if defendant would so contend, the record clearly would defeat such a claim. Lori Harkins and Jennifer Wilson were extensively cross-examined at the preliminary hearing and the interest and motive were similar to that at trial.

The defendant asserts that "The defendant, in whose trial the preliminary hearing testimony of an incriminating witness is permitted to be read, is clearly denied his Six [*sic*] Amendment right to confrontation whether or not the court takes reasonable steps to induce the witness to testify." As previously set forth, there is a traditional exception to the confrontation clause when the witness is unavailable. The requirements of this exception were clearly met in the instant case.

We find that a witness who is physically available yet refuses to testify, after the court has used all available avenues to coerce such testimony, is unavailable. This is true even though such a witness does not fit neatly into one of the subdivisions of Evidence Code section 240.

In *People v. Rojas* (1975) 15 Cal.3d 540 [125 Cal.Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127], a witness refused to testify because he was in fear of his safety and that of his family. (*Id.* at p. 550.) The Supreme Court was called on to determine if this was sufficient to show unavailability. The court

found the following statements to be pertinent: ■ " 'Like other rules of construction, the maxim *expressio unius est exclusio alterius* [expression of one thing is the exclusion of another] gives way where it would operate contrary to the legislative intent to which it is subordinate or where its application would nullify the essence of the statute. [Citations.] Likewise the rule is inapplicable where no reason exists why persons or things other than those enumerated should not be included, and manifest injustice would follow by not including them. [Citation.] . . . The rule as expressed in the maxim also fails if such interpretation leads to absurd and undesirable consequences.' " (*Id.* at p. 551.)

■ The court found that there was not a sufficient reason "why the former testimony of a witness who is present in court but refuses to testify because he is in fear of his safety or that of his family should not be used when that of a witness, who claims privilege or who is absent from the hearing and his attendance cannot be compelled or procured, can be used." (*Ibid.*) Such a preclusion would lead to an undesirable consequence, would thwart the ends of justice, and would endanger the judicial system. (*Id.* at p. 552.) The court concluded that the witness's refusal to testify on the grounds of fear for the safety of his person and that of his family made him unavailable within the meaning of Evidence Code section 240, subdivision (a)(3). The witness could not be compelled to testify and his prior testimony was properly admitted.

The purpose behind Evidence Code section 240 is to ensure that a witness is unavailable before the court can determine if the witness's prior testimony can be utilized. Naturally physical unavailability is such a situation, but the witness is no more available when his body is present but he refuses to testify and the court is unable to compel him to do so by its process. There is no reason why a physically available yet unwilling to testify witness should not be included as an unavailable witness. A manifest injustice leading to absurd and undesirable consequences would result by not including them. " '[T]he important element is whether the *testimony* of the witness is sought and is available and not whether the witness' body is available.' " (*People* v. *Walker, supra,* 145 Cal.App.3d 886, 894.)

■ Lori Harkins and Jennifer Wilson were unavailable witnesses. The court was unable to compel them to testify. The testimony which was admitted was subject to cross-examination with an interest or motive similar to that at trial. The trial court did not err.

## II., III.*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Woolpert, Acting P. J., and Best, J., concurred.

---

*See footnote, *ante*, page 579.