Filed 8/4/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>ELJAROD LAWSON,<br><br>        Defendant and Appellant. | A154481<br><br>(Alameda County<br>Super. Ct. No. 619332) |

Following a retrial, a jury convicted Eljarod Lawson of three felony counts relating to the sexual assault of Jane Doe 3. Lawson contends the trial court violated his state and federal rights to confrontation when it determined Jane Doe 3 was unavailable and admitted her testimony from his first trial and the preliminary hearing. Lawson further contends Code of Civil Procedure section 1219, subdivision (b), which prohibits the incarceration of sexual assault victims for their refusal to testify, also impaired his state and federal confrontation rights because the court had no sufficient means to compel Jane Doe 3's testimony. We affirm.

### BACKGROUND[1]

In September 2007, Lawson forced Jane Doe 3 into his car, drove to a remote area, where he brutally raped and sodomized her, and forced her to orally copulate him. A little over a year later, in November 2008, Jane Doe 3

---

[1] Because the facts underlying the crimes are not relevant to the issues on appeal, we provide a general summary.

saw Lawson while she was driving in her car. She called the police, who came to her location and detained him. Jane Doe 3 participated in a field show-up and identified Lawson as the man who raped her.

Following this November 2008 field identification, Jane Doe 3 did not hear from the police again until 2016, when Lawson was arrested in connection with the rapes of Jane Doe 1 and Jane Doe 2. Jane Doe 3 participated in a photographic lineup, and she again identified Lawson.

Lawson was charged with 10 counts relating to separate incidents of sexual assault involving Jane Doe 1, Jane Doe 2, and Jane Doe 3. The jury acquitted Lawson of the counts involving Jane Doe 1. But it could not reach a verdict regarding any of the Jane Doe 2 and Jane Doe 3 counts. A mistrial was declared as to those counts.

Following the mistrial, Lawson was again charged with the counts of sexual assault involving Jane Doe 2 and Jane Doe 3 that were the subject of the first trial, as well as counts involving a new Jane Doe 1. Jane Doe 3 refused to testify in the second trial. The court found her unavailable as a witness and admitted her prior testimony from the preliminary hearing and the first trial into evidence.

The jury was unable to reach verdicts on the counts involving Jane Doe 1 and Jane Doe 2. The jury convicted Lawson of forcible rape (Pen. Code, § 261, subd. (a)(2)), forcible oral copulation (*id.*, former Pen. Code § 288a, subd.(c)(2)(A)), and forcible sodomy (*id.*, Pen. Code § 286, subd. (c)(2)(A)) committed against Jane Doe 3. The jury could not reach a verdict on the remaining counts and enhancement allegations. The court declared a mistrial, and, on the prosecution's motion, such counts and allegations were dismissed.

## DISCUSSION

### I. No Error in Finding Jane Doe 3 Was Unavailable to Testify

#### A.    *Background*

Before the second trial, the prosecutor filed a motion seeking to declare Jane Doe 3 unavailable and admit her testimony from the preliminary hearing and first trial. According to the motion, when representatives from the district attorney's office visited Jane Doe 3 at her home, she was angry and adamant that she would not testify again. She expressed the need to protect her emotional well-being.

On a second visit to Jane Doe 3's home, representatives from the district attorney's office served her with a subpoena to testify in this case. After receiving it, Jane Doe 3 said she would not come to court to testify. When she was told a subpoena was a court order, she explained that "while she did not want to disrespect the court, she felt she could not come to court again." Jane Doe 3 wrote a letter to the court explaining she would "not attend court on this matter or partake [in] this case [d]ue to the trauma this has cause[d] by resurf[a]cing into [her] life." She continued, "After I testified I felt as if everything that happened was my fault, being ridiculed and shamed, has forced me to backslide in my life. I am trying to move forward not backwards."

At the behest of defense counsel, the trial court issued an order to show cause for Jane Doe 3's appearance, and appointed counsel for her. The prosecution served Jane Doe 3 with the order to show cause as directed.

On January 11, 2018, Jane Doe 3 appeared with her court-appointed attorney. The court expressed its "intention to order Jane Doe 3 back to testify in this trial[.]" Counsel stated that he had lengthy conversations with Jane Doe 3 and "reviewed some of the materials that have been presented

3

before [the court] about her desire [not] to participate" in the trial. According to counsel, Jane Doe 3 "ha[d] extremely strong feelings about not participating in this trial for a whole host of reasons." Counsel did not believe "that there's going to be any change any time for any reason where [Jane Doe 3] will testify in this case for the prosecution or on behalf of the defense." After hearing further argument, the court ordered Jane Doe 3 to return to court with her lawyer on January 24.

On January 24, Jane Doe 3, her lawyer, and the parties appeared for another hearing on her unwillingness to testify. Jane Doe 3 was sworn as a witness and said that she had previously testified at the preliminary hearing and at the prior trial, and that she was not "prepared to testify a third time." When the court asked her, "If I ordered you to testify, would you testify?" Jane Doe 3 replied, "With all due respect, no, sir." It was made clear to Jane Doe 3 that the case would be tried to a different jury and that the defense had a right to have that jury observe her to judge her credibility. Jane Doe 3 reiterated that she did not "want to partake in this hearing." The court asked her why, and Jane Doe 3 answered, "I just don't want to. I don't want to re-live the situation." When she was asked to specify how the situation affected her, Jane Doe 3 said "[i]n numerous ways" and that she did not "really want to speak about that." Jane Doe 3 understood that it was "within [the court's] discretion to find [her] in contempt of court for not testifying, and as a result, to fine [her] a maximum of $1,000."

After hearing argument, the court declined to find Jane Doe 3 in contempt of court, reasoning that she "has been respectful to the Court; has made all appearances that the Court has requested; has been respectful on the stand." The court relied on *People v. Cogswell* (2010) 48 Cal.4th 467 (*Cogswell*) to find Jane Doe 3 unavailable to testify. The court observed that

4

even if Jane Doe 3 was held in contempt, "under 1219(b) of the Code of Civil Procedure . . . [it] would not have been able to confine her." Relying on *People v. Smith* (2003) 30 Cal.4th 581 (*Smith*), the court determined that such a finding of contempt "is an extreme action [that] circumvents the spirit of 1219(b) of the Code of Civil Procedure." The court concluded that Jane Doe 3 was unavailable for trial under section 240, subdivision (a)(4), and her prior testimony was admissible.

## B. *Applicable Law and Standard of Review*

"A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses." (*People v. Herrera* (2010) 49 Cal.4th 613, 620 (*Herrera* ).) However, there is " ' "an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant [and] was subject to cross-examination . . . ." ' " (*Id.* at p. 621.) This exception "is codified in the California Evidence Code. [Citation.] Section 1291, subdivision (a)(2), provides that 'former testimony,' such as preliminary hearing testimony, is not made inadmissible by the hearsay rule if 'the declarant is unavailable as a witness,' and '[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing.' " (*Ibid.,* fns. omitted.)[2]

But not every witness absent from the proceedings is considered to be unavailable. "A witness who is absent from a trial is not 'unavailable' in the constitutional sense unless the prosecution has made a 'good faith effort' to

---

[2] Lawson does not contend he had insufficient prior opportunity to cross-examine Jane Doe 3.

obtain the witness's presence at the trial." (*Herrera, supra,* 49 Cal.4th at p. 622.) The "Evidence Code features a similar requirement for establishing a witness's unavailability. Under section 240, subdivision (a)(5) . . ., a witness is unavailable when he or she is '[a]bsent from the hearing and the proponent of his or her statement has exercised *reasonable diligence* but has been unable to procure his or her attendance by the court's process.' " (*Ibid.*)

Here, the trial court determined that Jane Doe 3 was unavailable under a similar provision; Evidence Code section 240, subdivision (a)(4) (section 240 (a)(4)), provides that a witness is unavailable when he or she is "[a]bsent from the hearing and the court is unable to compel his or her attendance by its process." In *Herrera*, our Supreme Court recognized that while unavailability under section 240 (a)(4) may not require a proponent's "reasonable diligence" to secure a witness's attendance at a hearing, "unavailability *in the constitutional sense* nonetheless requires a determination that the prosecution satisfied its obligation of good faith in attempting to obtain [the witness's] presence." (*Herrera, supra,* 49 Cal.4th at pp. 622-623, italics added.) Thus, we must consider whether the prosecutor's efforts in producing Jane Doe 3 for trial "were reasonable under the circumstances presented," and whether the court was unable to compel her attendance by process. (*Id.* at p. 623.)

When a witness, like Jane Doe 3, has been the victim of sexual assault, the determination of reasonableness must take into account the import of Code of Civil Procedure section 1219, subdivision (b) (Section 1219(b)). It provides, in relevant part, "Notwithstanding any other law, no court may imprison or otherwise confine or place in custody the victim of a sexual assault . . . for contempt when the contempt consists of refusing to testify concerning that sexual assault . . . ." (Section 1219(b).) Our Supreme Court

has held this provision "reflects the Legislature's view that sexual assault victims generally should not be jailed for refusing to testify against the assailant." (*Cogswell, supra,* 48 Cal.4th at p. 478.)

"We review the trial court's resolution of disputed factual issues under the deferential substantial evidence standard [citation], and independently review whether the facts demonstrate prosecutorial good faith and due diligence [citation]." (*Herrera, supra,* 49 Cal.4th at p. 623.)

## C.    *Analysis*

Lawson contends the trial court erred when it found Jane Doe 3 was unavailable because her presence in court and her refusal to testify, without a finding of contempt, is not a circumstance described within Evidence Code section 240. According to Lawson, Evidence Code section 240 provides "an exclusive definitional list of the categories of unavailability cognizable under the Evidence Code."

Such a narrow construction of section 240 was rejected in *Smith* by the California Supreme Court. (*Smith, supra,* 30 Cal.4th at pp. 623-624.) There, a witness came to court but refused to testify unless she could tell jurors that she was against the death penalty. As relevant here, the court explained that "[t]he circumstance that Mary G. was physically present in the courtroom and merely refused to testify does not preclude a finding of unavailability. Evidence Code section 240, which defines when a witness is unavailable, does not specifically describe this situation, but that statute does not 'state the exclusive or exact circumstances under which a witness may be deemed legally unavailable for purposes of Evidence Code section 1291.' (*People v. Reed* (1996) 13 Cal.4th 217, 228.) Courts have admitted 'former testimony of a witness who is physically available but who refuses to testify (without making a claim of privilege) if the court makes a finding of unavailability

7

only after taking reasonable steps to induce the witness to testify unless it is obvious that such steps would be unavailing.' (*People v. Sul* (1981) 122 Cal.App.3d 355, 364-365 [(*Sul*)] (plur. opn.), citing *Mason v. United States* (10th Cir. 1969) 408 F.2d 903; accord, *People v. Francis* (1988) 200 Cal.App.3d 579, 584; *People v. Walker* (1983) 145 Cal.App.3d 886, 894.)" (*Smith, supra,* 30 Cal.4th at p. 624.)

The efforts to induce Jane Doe 3 to testify in this case appear reasonable under the circumstances. Members of the prosecution team spoke to Jane Doe 3 on at least two occasions to discuss her testimony at trial. Each time, she was adamant that she would refuse to testify. Even after the prosecution team served Jane Doe 3 with a subpoena and advised her of the consequences of ignoring it, she still refused to cooperate. Jane Doe 3 wrote a letter to the court stating that she did not want to testify. Thereafter, at the court's direction, the prosecution served Jane Doe 3 with an order to show cause. She appeared at two hearings with her court-appointed counsel, who advised the court of Jane Doe 3's steadfast desire not to testify. At one of the hearings, the court questioned Jane Doe 3 and asked whether finding her in contempt and imposing a $1,000 maximum fine would influence her to change her mind. She said it would not. Because Jane Doe 3 was being asked to testify about her rape and assault in 2008, section 1219(b) applied, and the court "had no power to incarcerate this victim of a sexual assault for refusing to testify concerning that assault. (Code Civ. Proc., § 1219, subd. (b).)" (*Smith, supra,* 30 Cal.4th at p. 624.)

Lawson argues that notwithstanding section 1219(b), the court was required to find Jane Doe 3 in contempt before it could deem her unavailable. We disagree. " 'Trial courts do not have to take extreme actions before making a finding of unavailability.' ([]*Sul, supra,* 122 Cal.App.3d at p. 369

8

[].)" (*Smith, supra,* 30 Cal.4th at p. 624.) Instead, *Smith* requires only that the court take "reasonable steps to induce the witness to testify unless it is obvious that such steps would be unavailing." (*Smith, supra,* 30 Cal.4th at p. 624.)

Although Lawson contends the trial court could have imposed a fine or otherwise done more to persuade Jane Doe 3 to testify, additional efforts are not required when "it is obvious that such steps would be unavailing." (*Smith, supra,* 30 Cal.4th at p. 624, quoting *Sul, supra,* 122 Cal.App.3d at pp. 364-365.) The trial court observed Jane Doe 3's demeanor, affect, and listened to her responses. After considering her apparent resolve, the court found that there was nothing further it could do to coerce her testimony. The record supports this conclusion, and we therefore affirm the finding. (*People v. Alcala* (1992) 4 Cal.4th 742, 778-780 [using substantial evidence standard to affirm trial court finding that witness was unavailable].) In the circumstances, a finding of contempt would be a symbolic gesture and without practical impact. "The law neither does nor requires idle acts." (Civil Code § 3532.)

Following and applying *Smith*, we conclude the trial court properly found Jane Doe 3 was unavailable to testify and did not err when it admitted her prior testimony into evidence.

We are not persuaded by Lawson's suggestion that *Smith* and similar cases were abrogated by the 2010 addition of subdivision (a)(6) to to Evidence Code section 240. Under subdivision (a)(6), a declarant who is "[p]ersistent in refusing to testify" about the subject of his or her out-of-court statement "despite having been found in contempt" for refusing to testify is "unavailable." (Evid. Code, § 240, subd. (a)(6).) The addition of this variant of refusal to testify to the statutory definition of unavailability is entirely

9

consistent with prior case law. (*Smith, supra,* 30 Cal.4th at p. 624; *People v. Reed, supra,* 13 Cal.4th at pp. 226-227; *People v. Francis, supra,* 200 Cal.App.3d at pp. 585-587.) It did not, as Lawson suggests, abrogate those holdings. His reliance on the maxim of statutory construction *expressio unius est exclusio alterius*—that is, "[t]he expression of some things in a statute necessarily means the exclusion of other things not expressed" (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852)—does not help him.

We presume the Legislature was aware of existing law when it added subdivision (a)(6) to Evidence Code 240. (*People v. Landry* (2016) 2 Cal.5th 52, 105; *People v. Childs* (2013) 220 Cal.App.4th 1079, 1104.) Included within our presumption is the Legislature's awareness that under *Smith* a witness may be unavailable even if he or she did "not fit neatly into one of the subdivisions of Evidence Code 240." (*People v. Francis, supra,* 200 Cal.App.3d at p. 587.) Had the Legislature wanted to so limit the concept of unavailability to an exclusive definitional list, it would have done so when it enacted subdivision (a)(6). It did not. If anything, the legislative history of the 2010 amendment to section 240 reflects an intent to *expand* the definition of unavailability. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1723 (2009-2010 Reg. Sess.) p. 2; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1723 (2009-2010 Reg. Sess.) June 29, 2010, p. 12.)

The 2010 addition of subdivision (a)(6) to Evidence Code section 240 did not abrogate prior case law. Instead, this amendment expanded the statutory definition of unavailability and did not affect the trial court's ability to find Jane Doe 3 was unavailable.

The admission of Jane Doe 3's prior testimony did not violate Lawson's statutory or constitutional rights.

## II. Code of Civil Procedure section 1219

Lawson argues that the effect of Code of Civil Procedure section 1219, subdivision (b) vitiates the power of the court to compel witness testimony and, as a result, unconstitutionally impairs his right to confront adverse witnesses. He says this is so because section 1219 (b) is, in effect, a grant of "immunity" and the court can no longer coerce a witness to testify by incarceration for contempt. Thus, he says, section 1219 (b) "vitiated the finding of unavailability[,]" thereby resulting in a deprivation of his right to confrontation.

"Code of Civil Procedure section 1219, originally enacted in 1872, provides that when a person has been found in contempt of court for refusal to perform an act that the person is capable of performing, the court may order the person jailed until that act is performed. (*In re Mark A.* (2007) 156 Cal.App.4th 1124, 1143.)" (*Cogswell, supra,* 48 Cal.4th p. 477.) Subdivision (b), was added to section 1219 in 1984 (*ibid.*), and proscribes the imprisonment of sexual assault victims who refuse to testify. "It is the intent of the Legislature that a victim of sexual assault shall be accorded special consideration because of the severity of the emotional harm resulting from this type of crime. It is the further intent of the Legislature that this act shall not be interpreted to excuse any person other than a victim of sexual assault from the prescribed penalties for contempt." (Stats. 1984, Ch. 1644, Sec.3)

Lawson correctly points out that courts have "inherent power to punish for contempts of court. [Citations]." (*In re McKinney* (1968) 70 Cal.2d 8, 10-11.) But the contempt power is not absolute. Rather, its exercise is regulated by statute, and the Legislature may place reasonable limitations on the court's contempt power. (*Id.* at p. 11.)

11

Although Lawson's briefs do not go so far as saying that standing alone section 1219 (b) is unconstitutional, his implicit argument is that punishment for contempt is an inherent power which the Legislature cannot curtail. But our Supreme Court has explained that legislative limits on the contempt power are unconstitutional when the Legislature "completely strip[s] the courts of power to treat or punish as contempt a class of offenses." (*McKinney, supra,* 70 Cal.2d at p. 12, citations omitted.)

Section 1219 (b) does not deprive the court of all power to punish a class of contempts. Indeed, the trial court may impose a fine and adjudge a recalcitrant sexual assault victim to be in contempt. (See Code Civ. Proc., § 1218, subd. (a).) Section 1219 (b) merely "prohibits a trial court from *jailing for contempt* a sexual assault victim who refuses to testify against the attacker." (*Cogswell, supra,* 48 Cal.4th at p. 478.) This limitation is reasonable in light of the unique circumstances faced by witnesses who are victims of sexual assault.

*Cogswell*, although virtually ignored by Lawson,[3] informs our decision. There, the California Supreme Court explained: "Although any crime victim may be traumatized by the experience, sexual assault victims are particularly likely to be traumatized because of the nature of the offense. To relive and to recount in a public courtroom the often personally embarrassing intimate details of a sexual assault far overshadows the usual discomforts of giving testimony as a witness. And the defense may, through rigorous cross-examination, try to portray the victim as a willing participant. (See

---

[3] *In re Michael G.* (1988) 44 Cal.3d 283, superseded by statute as stated in *In re A.N.* (2020) 9 Cal.5th 343, 354, cited by Lawson, is inapposite as it did not involve contempt proceedings regarding a sexual assault victim. (*Id.* at p. 287.) Rather, the question before the court was whether the juvenile court could exercise its contempt power to detain a minor during non-school hours. (*Ibid.*)

generally, Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom* (1977) 77 Colum. L.Rev. 1.)  Also, seeing the attacker again—this time in the courtroom—is for many sexual assault victims a visual reminder of the harrowing experience suffered, adding to their distress and discomfort on the witness stand.  (See Ellison, The Adversarial Process and the Vulnerable Witness (2001) pp. 16–17.)  It comes as no surprise, therefore, that often a victim of sexual assault is hesitant to report the crime.  Even fewer such crimes would be reported if sexual assault victims could be jailed for refusing to testify against the assailant.

"Recognizing these concerns, the California Legislature in 1984 amended Code of Civil Procedure section 1219 to add subdivision (b).  (Sen. Bill No. 1678 (1983–1984 Reg. Sess.) § 2.)  That provision, as mentioned earlier, prohibits a trial court from *jailing for contempt* a sexual assault victim who refuses to testify against the attacker.  As the author of that legislation explained to his fellow senators: 'The purpose of [section 1219 (b)] is not only to protect victims of sexual assault from further victimization resulting from imprisonment or threats of imprisonment by our judicial system, but also to begin to create a supportive environment in which more victims might come forward to report and prosecute [perpetrators of] sexual assault.'  (Sen. Floor Statement by Sen. Dan McCorquodale on Sen. Bill No. 1678, May 1, 1984.)  Enactment of section 1219 (b) reflects the Legislature's view that sexual assault victims generally should not be jailed for refusing to testify against the assailant."  (*Cogswell, supra,* 48 Cal.4th at p. 478.)

Neither is the absence of confinement as a remedy for contempt a new or novel development in the trial courts.  It has long been the case that a contempt finding may have little or no coercive effect for witnesses who are already incarcerated.  (*People v. Walker* (1983) 145 Cal.App.3d 886, 894.)

Here, after inquiry, the trial court concluded that Jane Doe 3 was not willing to testify, and her testimony could not be coerced by threat of contempt or imposition of a fine. The conclusion that she was legally unavailable to testify and use of her prior testimony did not violate Lawson's right to confront adverse witnesses.

Code of Civil Procedure section 1219 (b) is a reasonable limit on the trial court's contempt power enacted to spare victims of sexual assault from further victimization. Accordingly, the admission of Jane Doe 3's prior testimony did not violate Lawson's state and federal confrontation rights.

## DISPOSITION

The judgment is affirmed.

_____
Siggins, P.J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.


*People v. Lawson*, A154481

15

Trial Court:                                    Alameda County Superior Court


Trial Judge:                                    Hon. Allan D. Hymer


Counsel:

Mark David Greenberg, Second District Appellate Project, under
appointment of the Court of Appeal, for Appellant.


Xavier Becerra, Attorney General, Jeffrey M. Laurence, Senior Assistant
Attorney General, Donna M. Provenzano, Supervising Deputy Attorney
General, Victoria Ratnikova, Deputy Attorney General, for Respondent.