Filed 6/10/16  P. v. Ortiz CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| THE PEOPLE, | B259840 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA101692) |
| v. | |
| GERARDO ORTIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, George Genesta, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Regrettably, the prosecutor incorrectly informed the young victim of several sex crimes that she had a choice whether to testify at trial. A witness under subpoena has a duty to testify, not a choice. (*People v.Smith* (2003) 30 Cal.4th 581, 624.) Despite this misstatement, the prosecutor ensured that the victim was present at defendant's trial, the court informed her of the importance of testifying, and the victim testified over two days until she suffered an emotional breakdown. Under these circumstances, we conclude the trial court properly found her unavailable and properly admitted her preliminary hearing testimony. We affirm the judgment of conviction.

## FACTS AND PROCEDURE

### 1. Charges Against Defendant

In a seven-count information, defendant was charged with forcible rape of a victim under 14 years, forcible lewd act upon a child, forcible oral copulation on a child under 14 years, sexual penetration by a foreign object on a child under 14, and two counts of aggravated sexual assault of a child. Two prior convictions within the meaning of Penal Code section 1203, subdivision (e)(4) and two (incorrectly alleged as three) prior convictions within the meaning of section 667.5, subdivision (b) were alleged.

### 2. Monica—the Victim of Defendant's Sex Crimes—Refuses to Testify

Monica was 13, when the sex acts underlying defendant's convictions occurred. Monica's mother rented a room in a house owned by defendant's mother, where defendant also lived. When she first reported defendant's conduct to police (following the urging of her friend), Monica was timid, shy, and quiet. She was emotional. Monica did not want to discuss the incident with the nurse practitioner who examined her.

Monica testified at the preliminary hearing, but her testimony was interrupted because she became upset and needed a break. During her testimony, she scratched her arm profusely causing it to bleed.

On the day she was supposed to testify at defendant's trial, Monica ran away from home. She ran away to avoid testifying. Monica was located and escorted to court.

Prior to trial, the court held a hearing to determine whether Monica was unavailable to testify. The nature of defendant's appellate arguments require extensive quotation from that hearing.

First, the prosecutor commenced questioning Monica as follows:

"Q [Prosecutor:] And you were explained that you have the right to choose whether or not you'd like to testify today, correct?

"A Yes.

"Q Have you made a decision on whether or not you would like to testify today?

"A Yes.

"Q And what is your decision?

"A I wouldn't like to testify."

The court then inquired as follows:

"The Court: Have you spoken to anyone or anyone spoken to you about why it would be important for you to testify in this case?

"The Witness: Yes.

"The Court: And who have you spoken to?

"The Witness: Mr.—

"The Court: The prosecutor, the man that's asking the questions or someone else?"

The prosecutor then resumed asking questions as follows:

"Q Have I spoken to you about whether it's important for you to testify?

"A Yes.

"Q And have I given you the decision to choose whether or not you want to testify?

"A Yes.

"Q And your choice is that you do not want to testify?

"A Yes.

3

"Q      Has any—do you think that speaking to a counselor or anything else would help you in any way to make this decision?

"A      Can you repeat the question[?]

"Q      If you were to speak to a counselor appointed—a counselor appointed by the court, would that help you in any way to make your decision on whether or not to testify in this case?

"A      No.

"Q      And you're I guess—so you do not want to testify in this case at all?

"A      Yes.

"Q      Do you think anything would change your mind in regards to that?

"A      No."

The court then explained the importance of testifying to Monica:

"The Court:  [The prosecutor] told you it's your decision whether you wish to testify or not.  However, you are a witness in this action and that the court considers it very important that you testify in this case and the jury can hear your words and see you as you testify.  [¶]  Do you understand the importance of that?"

"The Witness:  Yes.

"The Court:  And do you understand the importance and seriousness of the charges in this case?

"The Witness:  Yes.

"The Court:  And the events that occurred that you were involved in?  You recall that, too, right?

"The Witness:  Yes.

"The Court:  And it's very important not only for yourself but for the system to operate that you be able to testify or testify in this trial rather than your prior testimony at the previous proceeding at the preliminary hearing.  Do you understand that?

"The Witness:  Yes.

"The Court:  Has anyone also talked to you about the importance for you to testify such as your mother or anyone else encourage you to testify?

4

"The Witness: No.

"The Court: If I had a counselor talk to you about those events that you experienced and the importance for you to tell your story in front of the jury about what happened, would that help you in deciding whether you may change your mind in testifying?

"The Witness: No."

The court then suggested other options that might persuade Monica to testify.

"The Court: Would any amount of time, If I gave you a half hour or the rest of the day to think about it and [the prosecutor] talked to you again or a counselor talked to you again about the importance for you to testify, would that assist you in rethinking your position at this time?

"The Witness: No.

"The Court: Is there a point in time when you decided you no longer wanted to testify in this case? In other words, when did you reach that decision?

"The Witness: Yesterday.

"The Court: Yesterday, and was that when you were told that you needed to be in court today to testify?

"The Witness: Yes.

"The Court: And when you were told you had to testify, what was your reaction? Were you upset, or was your thinking that you maybe testify, not testify or did you decide at that time you didn't want to testify?

"The Witness: I didn't want to testify.

"The Court: It's my understanding that you were told to be here in court at what time this morning?

"The Witness: 8:00.

"The Court: Eight o'clock. And you did not leave your house voluntarily to come to court, did you?

"The Witness: No.

5

"The Court: And why didn't you want to come to court? Is it because you didn't want to testify in this case?

"The Witness: No, I didn't.

"The Court: Excuse me?

"The Witness: I didn't want to testify.

"The Court: It's my understanding that you left your residence when the police were coming to talk to you about coming and testifying; is that correct?

"The Witness: Yes.

"The Court: Would it be fair to say that you ran away?

"The Witness: Yes.

"The Court: And why did you run away?

"The Witness: Because I didn't want to be here.

"The Court: Are you here because you were told you had to be here today?

"The Witness: Yes.

"The Court: How did you get to court?

"The Witness: Detective Burke and Judy came for me.

"The Court: Okay. Now, the law gives me certain powers in regards to witnesses who do not want to testify and I normally exercise certain powers. However, there are only certain things I can do because of your age and because of the nature of the crimes involved here. But if I had you wait in an office here in this building . . . and you couldn't leave until I told you you could do so and that I would check on you or have you come down in the morning or in the afternoon to see whether you changed your mind, if I told that was maybe going to be the situation, would that cause you to rethink your position?

"The Witness: No."

Defense counsel stated that he "believe[d] the prosecution has fully exercised their due diligence in getting the witness to appear."

The court indicated that Monica had no privilege upon which to ground her refusal to testify. The court stated, "She is a witness who refuses to cooperate in testifying under

oath before a jury." Additionally, the court stated, "She's a 14-year-old person at this point who is insistent on not testifying under any circumstance. [¶] Therefore, the court will not engage in the exercise of holding her here as a possible witness and her changing her mind. And the court finds that under [Evidence Code section 240] this showing has been made. That she is legally unavailable to testify at the time of trial."

At defense counsel's request, the court agreed that Monica should appear before the jury. Monica appeared before the jury and began testifying. She answered questions posed by the prosecutor. In addition to a description of defendant's conduct,[1] Monica testified that "it's just too much for me and because I'm scared and anxious and right now I'm really uncomfortable." She testified that she was scared of being in the same room as defendant. When Monica stopped answering questions and testified that she did not want to answer all of the questions, the court instructed her: "As a witness you cannot choose which questions you wish to answer or not answer. You're supposed to answer all questions." The court indicated for the record that Monica "has sat with her shoulders slumped and her face looking down, her affect has been muted except for a couple instances where she teared up and cried quietly to herself."

The next day, Monica resumed testifying. She testified that it was hard for her to answer questions because she did not like using defendant's name. She testified that she failed to answer all of the questions because it was hard for her to testify. After offering her a tissue, the court asked Monica if it would help her to take a break, and Monica answered affirmatively. At the end of the break, Monica refused to leave the bathroom. A deputy sheriff, her mother, and a victim advocate tried to persuade her to come out of the bathroom. Eventually Monica exited, sat on a bench, and cried.

Monica was brought to the courtroom and the court asked her how she was feeling. Monica responded, "Anxious and uncomfortable." She said that she did not want to be in court and that testifying was making her anxious. She did not want to testify because testifying evoked bad memories.

---

[1]     We have not summarized Monica's substantive testimony because it was stricken.

Monica left the courtroom, and the court noted that when she testified the prior day, she was holding a teddy bear and gripping it. The court was concerned about Monica's emotional state.

The court evaluated the situation as follows: "This child is obviously disturbed, obviously doesn't want to be here and is being selective in terms of responding to questions. A witness cannot be selective in regards to whether they wish to answer a question or not answer a question. The record is quite clear in terms of how the court has instructed this witness that she cannot pick and choose what questions she wishes to answer where she does have a current recollection of the event within the content of the question. The court will make such a finding that there was a—simply a willful refusal. However, the willful refusal is based upon the court's observations of her mental and emotional state and the actual result is that we have a person here who simply is not testifying according to her memory of the events and is not helpful to the trier of fact . . . ."

Defense counsel requested the case be dismissed because he was unable to cross-examine Monica. Following the court's rejection of that position, defense counsel requested the court strike her substantive testimony but allow the jurors to make judgments about Monica's credibility based on their observations of her. The court granted that motion.

Monica's preliminary hearing testimony was then read to jurors.

### 3. Monica's Preliminary Hearing Testimony

At the preliminary hearing, Monica testified that she did not want to be in court.

Monica and defendant lived in the same home. On November 15, 2012, defendant spoke to her while she was in the kitchen and made her feel uncomfortable. Monica told defendant that she was 13 years old. At the time defendant spoke to her, Monica was wearing elastic shorts.

Shortly after their conversation in the kitchen, defendant was in his room and told Monica to come to him. Defendant made her sit down on a chair. He did this by placing his right hand on her left shoulder. When Monica was "about to leave" defendant

8

grabbed her and sat her down on the bed and then laid her down on his bed. Defendant kissed her. Monica was scared.

On a drawing Monica indicated that defendant touched her in the groin. Defendant pulled down her shorts. Defendant touched her inside and outside her vagina with his right hand and with his penis. He also orally copulated her. Defendant put his finger inside Monica's vagina between five and seven times. He inserted his penis in her vagina five times. Defendant held Monica's shoulder to prevent her from getting out of bed.

Monica did not give defendant permission to touch her. She also did not tell him to stop. She tried to get up once before the sexual conduct started.

Monica was cross-examined by defense counsel.

### 4. Other Witnesses at Trial

Deputy Sheriff Myra Sotomayor interviewed Monica at the police station. Monica reported that defendant spoke to her in the kitchen and asked how old she was. Defendant told her that she had a nice body and that he wanted to show her something in his room. When Monica went into his room, defendant grabbed her arm and "sat her" on a chair. Defendant sat down next to her and kissed her. Defendant locked the door.

Defendant then laid her down on his bed and pulled up her shorts. When she tried to get up, defendant pushed her down, at which point Monica froze. Defendant penetrated her vagina about seven times with his fingers on his right hand. He orally copulated her. He also put his penis inside her vagina.

Detective Jeffrey Burke also interviewed Monica about defendant. She told him that she was in the kitchen when defendant approached and complemented her. Defendant asked how old she was and Monica responded that she was 13. Defendant told her to come inside his room. When Monica agreed to speak to him, defendant grabbed her arms and sat her down on a chair inside his room. Defendant began complementing her and kissed her. Monica was scared.

Defendant then laid her down on his bed, laid on top of her, and removed her black shorts. Monica tried to sit up but defendant pushed her shoulders down. Defendant

9

licked her vagina. He pulled her underwear to the side and inserted his fingers in her vagina. He also kissed and licked her vagina. Defendant then opened his pants and inserted his penis in her vagina. Monica did not scream; she was in shock and froze. She was afraid if she yelled defendant would hurt her. Monica told Detective Burke that she did not fight defendant. She did not immediately tell anyone about defendant's conduct because she was scared and embarrassed.

A video of Monica's forensic interview was played for jurors. During the interview, Monica stated that she was in the kitchen and defendant told her how pretty she was and complemented her. Monica felt uncomfortable. As she walked to her bedroom, defendant told her he wanted to show her something in his room. Defendant sat her down on the chair and leaned over to kiss her. Monica tried to get up and defendant sat her down on the bed and closed the door. He took off her shorts, put his mouth in her vagina, and then inserted his penis in her vagina. Defendant had his hands on Monica's shoulder when he inserted his penis in her vagina. Defendant also inserted his finger in her vagina. Monica tried to get up but defendant pushed her down. Monica was afraid if she yelled, defendant would hurt her. She explained, ". . . I wanted to yell, I wanted to do something to stop it, but just, I was just . . . stopping myself from doing that cause I didn't want anything else to happen to me."

Physical evidence showed that semen was present in samples from Monica's vulva, anus, and hymen as well as the underwear she was wearing. Defendant was a contributor to the semen found on Monica's underwear with the possibility of a random match equaling one in 9.28 quadrillion people. No conclusions could be drawn from the other samples.

Defendant's mother was the sole defense witness. She testified that Monica regularly spoke to defendant.

## 5. *Verdict and Sentence*

Jurors convicted defendant of all charged crimes. Defendant admitted the prior offenses.

10

Defendant was sentenced to an aggregate term of 47 years to life in prison. Defendant was also sentenced to a two-year concurrent term on an unrelated case. Sentence on the remaining counts was stayed.

This appeal followed in which defendant challenged the use of Monica's preliminary hearing testimony.

## DISCUSSION

"A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses. (U.S. Const., 6th Amend.; Cal. Const., art. 1, § 15.) The right of confrontation 'seeks "to ensure that the defendant is able to conduct a 'personal examination and cross-examination of the witness, in which [the defendant] has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'" [Citations.] To deny or significantly diminish this right deprives a defendant of the essential means of testing the credibility of the prosecution's witnesses, thus calling "into question the ultimate '"integrity of the fact-finding process."'"'" (*People v. Herrera* (2010) 49 Cal.4th 613, 620-621.) "'[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, . . . to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.'" (*Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1137.)

Despite these important principles, the confrontation right is not absolute. (*Alvarado v. Superior Court, supra*, 23 Cal.4th at p. 1138.) It "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" (*Id.* at p. 1139.) "'Traditionally, there has been "an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant [and] which was subject to cross-

11

examination . . . .'"'" (*People v. Herrera, supra*, 49 Cal.4th at p. 621.)  "Pursuant to this exception, the preliminary hearing testimony of an unavailable witness may be admitted at trial without violating a defendant's confrontation right." (*Ibid*.)  The principal issue in this case is whether the trial court properly concluded Monica was unavailable.

## 1. *The Trial Court Properly Found Monica Was Unavailable as a Witness*

Defendant argues that Monica had no right to refuse to testify.  Defendant further argues that the trial court erred in finding Monica unavailable and that the court should have ordered Monica to testify and threatened adverse circumstances if she continued to refuse to testify.  As we shall explain, the trial court properly concluded Monica was unavailable.

"[A] witness who is physically available yet refuses to testify, after the court has used all available avenues to coerce such testimony, is unavailable.  This is true even though such a witness does not fit neatly into one of the subdivisions of Evidence Code section 240." (*People v. Francis* (1988) 200 Cal.App.3d 579, 587.)  "[T]he witness is no more available when his body is present but he refuses to testify and the court is unable to compel him to do so by its process." (*Id*. at p. 588.)  However, the trial court must take "reasonable steps to induce the witness to testify unless it is obvious that such steps would be unavailing." (*People v. Sul* (1981) 122 Cal.App.3d 355, 365 [holding that incarceration alone may not be reasonable]; *People v. Walker* (1983) 145 Cal.App.3d 886, 894 [following *Sul*].)  When a witness is unavailable, the witness's prior testimony may be read if it was subject to cross-examination. (Evid. Code, § 1291; *Crawford v. Washington* (2004) 541 U.S. 36, 59.)

"Witnesses under subpoena and present in court have a duty to testify in accordance with the rules of evidence, a duty trial courts have the power to enforce." (*People v. Smith* (2003) 30 Cal.4th 581, 624 (*Smith*).)  However, the trial court's ability to enforce the duty to testify is limited in the context of a victim of a sexual assault.  Code of Civil Procedure section 1219 "prohibits a trial court from *jailing for contempt* a sexual assault victim who refuses to testify against the attacker." (*People v. Cogswell* (2010) 48 Cal.4th 467, 478.)  "Although any crime victim may be traumatized by the experience,

12

sexual assault victims are particularly likely to be traumatized because of the nature of the offense. To relive and to recount in a public courtroom the often personally embarrassing intimate details of sexual assault far overshadows the usual discomforts of giving testimony as a witness. And the defense may, through rigorous cross-examination, try to portray the victim as a willing participant. [Citation.] Also, seeing the attacker again—this time in the courtroom—is for many sexual assault victims a visual reminder of the harrowing experience suffered, addition to their distress and discomfort on the witness stand." (*Ibid*.)

Our high court applied these principles in *Smith, supra*, 30 Cal.4th 581, a case similar to this one. *Smith* involved a witness who refused to testify unless she could tell jurors that she did not agree with the death penalty. As relevant here, our high court held: the fact that "Mary G. was physically present in the courtroom and merely refused to testify does not preclude a finding of unavailability. . . . Courts have admitted 'former testimony of a witness who is physically available but who refuses to testify (without making a claim of privilege) if the court makes a finding of unavailability only after taking reasonable steps to induce the witness to testify unless it is obvious that such steps would be unavailing.'" (*Id*. at pp. 623-624, citation omitted.) The high court rejected the defendant's argument that the trial court should have fined the recalcitrant witness for contempt. (*Id*. at p. 624.) It concluded that "[t]he court's efforts to induce Mary G. to testify were reasonable under the unusual circumstances of this case. The court questioned her under oath and asked whether additional time or prosecution for criminal contempt would change her mind. It had no power to incarcerate this victim of sexual assault for refusing to testify concerning that assault." (*Ibid*.)

*Smith* is dispositive of defendant's arguments. Although *Smith* recognized, as defendant argues, that a witness under subpoena has a duty to testify, a present witness who refuses to testify may be found unavailable if the court undertook reasonable steps to induce the witness to testify. (*Smith, supra*, 30 Cal.4th at p. 624.) Here, the court took reasonable steps. The court warned Monica that she was a witness and "the court considers it very important that you testify in this case and the jury can hear your words

13

and see you as you testify." The court asked Monica if she would rethink her decision not to testify if she spoke to a counselor, or if the court gave her more time. The court asked if Monica were placed in a locked room if that would change her mind and make her decide to testify. The court further insisted that Monica appear before the jury so that the jury could observe her, causing Monica to actually testify. The court found Monica unavailable after she testified over the course of two days and then proceeded to lock herself in the bathroom after an emotional breakdown. The court was not required to take additional steps to force Monica to continue testifying. (*Ibid.* ["Trial courts 'do not have to take extreme actions before making a finding of unavailability.'"].)

## 2. The Prosecutor's Statements to Monica Did Not Require the Exclusion of Her Prior Testimony

Defendant argues that the prosecution caused Monica's unavailability and therefore the prosecution could not use her prior testimony. Defendant relies on Evidence Code section 240, subdivision (b), which provides: "A declarant is not unavailable as a witness if the exemption, preclusion, disqualification, death, inability, or absence of the declarant was brought about by the procurement or wrongdoing of the proponent of his or her *statement for the purpose of preventing the declarant from attending or testifying.*" (Italics added.)

Defendant did not raise this issue in the trial court. Assuming it is preserved, he demonstrates no error. No fair reading of the record supported the interpretation that the prosecutor had the purpose of preventing Monica from attending trial or testifying at trial. Monica was an important prosecution witness who the prosecutor wanted to testify. The prosecutor ensured that Monica was present in court. (Even defense counsel acknowledged the prosecutor exercised due diligence.) Monica testified on direct examination until she broke down emotionally, locked herself in the bathroom, and emerged in tears. Although the prosecutor erred in telling Monica she had a choice to testify, the prosecutor did not prevent or have the purpose of preventing Monica from testifying.

14

Moreover, the prosecutor was not the cause of Monica's reluctance to testify. Instead, as our Supreme Court recognized in *People v. Cogswell, supra*, 48 Cal.4th at page 478 sexual assault victims may be traumatized by the nature of the offense and uncomfortable testifying in court. Monica's statements to the court revealed that she fell within this category of victims. Monica testified that "it's just too much for me and because I'm scared and anxious and right now I'm really uncomfortable." She testified that she was scared of being in the same room as defendant. It was defendant's conduct, not the prosecutor's, that caused Monica's refusal to testify.

Defendant insinuates that the prosecutor committed prosecutorial misconduct by telling Monica that she had the choice not to testify. Assuming that the prosecutor's misstatement of the law (which was corrected by the trial court) amounted to misconduct, there was no prejudice because the trial court told Monica it was important for her to testify, and she then testified until she suffered an emotional breakdown. Defendant ignores the critical facts that the prosecutor forced Monica to appear in court even though she ran away, and that Monica actually testified. These significant facts belie his argument that his trial "was infected by the prosecutor's advice to" the victim that she could decide whether to testify.

### 3. *Defendant Had the Same Motive for Cross-examination at the Preliminary Hearing and at Trial*

The confrontation clause permits the introduction of prior testimony only if the defendant had a similar motive for cross-examination in the prior proceeding. (Evid. Code, § 1291, subd. (a)(2);[2] *Crawford v. Washington, supra*, 541 U.S. at p. 59.) Defendant argues that he did not have a similar motive at the preliminary hearing as at trial. His argument lacks merit.

---

[2] Evidence Code section 1291, subdivision (a)(2) provides: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] . . . [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

In both proceedings defendant sought to discredit the prosecution's theory. (*People v. Carter* (2005) 36 Cal.4th 1114, 1173.) "'[A]s long as a defendant was provided the *opportunity* for cross-examination, the admission of preliminary hearing testimony under Evidence Code section 1291 does not offend the confrontation clause of the federal Constitution simply because the defendant did not conduct a particular form of cross-examination that in hindsight might have been more effective.'" (*Id.* at pp. 1173-1174; see *People v. Zapien* (1993) 4 Cal.4th 929, 976.) Therefore, even if as defendant argues his counsel did not seek to challenge Monica's credibility at the preliminary hearing, he had the opportunity to do so. Moreover, it appears defense counsel did seek to challenge Monica's credibility. He went through the events with Monica and elicited testimony that she did not tell defendant to stop. In short, the trial court did not err in finding Monica unavailable and admitting Monica's preliminary hearing testimony.

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

16